## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **DEFY VENTURES, INC.,** *et al.*, | **CASE NO.:** |
| **Plaintiffs,** | |
| **v.** | |
| **U.S. SMALL BUSINESS ADMINISTRATION,** *et al.* | |
| **Defendants.** | |

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION
## FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................... 1

Statement of Facts ........................................................................................ 4

    A.    Congress Enacts the Paycheck Protection Program. ............................. 4

    B.    The SBA Imposes Criminal-Record Exclusions on PPP
           Eligibility. ......................................................................................... 6

    C.    Plaintiffs Are Denied Vital Assistance During the COVID-19
           Pandemic. ........................................................................................... 9

Argument ................................................................................................... 12

I.    Plaintiffs are likely to succeed on the merits because the SBA's blanket
    criminal-record exclusions are contrary to the CARES Act and
    arbitrary and capricious. ....................................................................... 12

    A.    The text of the CARES Act unambiguously requires that "any"
           small business "shall" be eligible for the PPP. .................................. 12

           1.    The text of the CARES Act mandates that all businesses
                that satisfy the stated size and timing criteria are eligible
                for relief—leaving no room for the SBA's criminal-record
                exclusions. .................................................................................. 13

           2.    This interpretation of the CARES Act's text is consistent
                with the purpose of the PPP. ....................................................... 19

           3.    Courts have found that the text of the CARES Act
                unambiguously bars analogous SBA exclusions from the
                PPP. ............................................................................................ 22

    B.    The SBA's criminal-record exclusions are arbitrary and
           capricious. ......................................................................................... 25

II.    Plaintiffs will suffer irreparable harm in the absence of an injunction,
    and granting an injunction is in the public interest. ................................ 29

III.    This Court can and should enjoin enforcement of the challenged SBA
    criminal-record exclusions. ................................................................... 33

Conclusion ................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ali v. Fed. Bureau of Prisons,*
    552 U.S. 214 (2008) ............................................................................... 14

*Allentown Mack Sales & Service, Inc. v. NLRB,*
    522 U.S. 359 (1998) ............................................................................... 29

*Am. Acad. of Pediatrics v. Food & Drug Admin.,*
    399 F. Supp. 3d 479 (D. Md. 2019), *appeal dismissed sub nom.*
    *In re Cigar Ass'n of Am.,*
    No. 19-2130, 2020 WL 2116554 (4th Cir. May 4, 2020) ........................ 35

*Bostock v. Clayton Cty., Georgia,*
    No. 17-1618, 590 U.S. __ (U.S. June 15, 2020) ..................................... 19

*Bowman Transp. Inc. v. Ark.-Best Freight System,*
    419 U.S. 281 (1974) ............................................................................... 25

*Burlington Truck Lines v. United States,*
    371 U.S. 156 (1962) ............................................................................... 25

*In re Calais Regional Hospital,*
    No. 19-10486, 2020 WL 2201947 (Bankr. D. Me. May 1, 2020) ........... 35

*Camelot Banquet Rooms, Inc. v. Carranza,*
    No. 20-1729 (7th Cir. May 20, 2020).................................................... 23

*Camelot Banquet Rooms v. U.S. Small Bus. Admin.,*
    Nos. 20-C-601, 2020 WL 2088637 (E.D. Wis. May 1, 2020)..........................*passim*

*Casa De Maryland v. Dep't of Homeland Sec.,*
    924 F.3d 684 (4th Cir. 2019) ................................................................ 29

*Chevron, U.S.A., Inc. v Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ............................................................................... 12

*Children's Hosp. of the King's Daughters, Inc. v. Azar,* 896 F.3d 615
    (4th Cir. 2018)....................................................................................... 28

*Dewhurst v. Century Aluminum Co.,*
    649 F.3d 287 (4th Cir. 2011) ................................................................ 12

*Diocese of Rochester v. U.S. Small Bus. Admin.*,
  No. 6:20-CV-06243 EAW, 2020 WL 3071603
  (W.D.N.Y. June 10, 2020) ................................................................ 24

*DV Diamond Club of Flint, LLC v. Small Bus. Admin.*,
  No. 20-1437, 2020 WL 2988528 (6th Cir. May 15, 2020) ........................... 5, 23, 31

*DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*,
  No. 20-cv-10899, 2020 WL 2315880 (E.D. Mich. May 11, 2020) .................*passim*

*Fed. Leasing, Inc. v. Underwriters at Lloyd's*,
  650 F.2d 495 (4th Cir. 1981) ................................................................. 31

*FHA v. Burr*,
  309 U.S. 242 (1940) ............................................................................. 34

*In re Gateway Radiology Consultants, P.A.*,
  No. 8:19-BK-04971-MGW, 2020 WL 3048197
  (Bankr. M.D. Fla. June 8, 2020) ........................................................... 34

*Guilford Coll. v. McAleenan*,
  389 F. Supp. 3d 377 (M.D.N.C. 2019) .................................................... 28

*In re Hidalgo County Emergency Serv. Found.*,
  No. 19-20497, 2020 WL 2029252 (Bankr. S.D. Tex. Apr. 25, 2020) .................... 24

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
  17 F.3d 691 (4th Cir. 1994) ................................................................. 31

*Kingdomware Techs., Inc. v. United States*,
  136 S. Ct. 1969 (2016) .................................................................. 15, 16

*League of Women Voters of N.C. v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) ............................................................... 30

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ............................................................................. 15

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) ........................................................... 28

*Michigan v. E.P.A.*,
  135 S. Ct. 2699 (2015) ....................................................................... 29

*Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................. 25

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
    494 F.3d 188 (D.C. Cir. 2007) ............................................................. 28

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
    861 F.3d 502 (4th Cir. 2017) ............................................................. 12

*In re Roman Catholic Church of Archdiocese of Santa Fe*,
    No. 18-13027 T11, 2020 WL 2096113 (Bankr. D.N.M. May 1, 2020) ......... 5, 23, 27

*SAS Inst., Inc. v. Iancu*,
    138 S. Ct. 1348 (2018) ............................................................. 14, 16, 17

*Sierra Club v. U.S. Army Corps of Eng'rs.*,
    909 F.3d 635 (4th Cir. 2018) ............................................................. 12, 13

*Sierra Club v. U.S. Dep't of the Interior*,
    899 F.3d 260 (4th Cir. 2018) ............................................................. 26

*In re Skefos*,
    No. 19-29718-L, 2020 WL 2893413
    (Bankr. W.D. Tenn. June 2, 2020) ............................................................. 24, 26

*In re: Springfield Med. Care Sys., Inc.*,
    No. 19-10285, 2020 WL 2311881 (Bankr. D. Vt. May 8, 2020) ............................ 33

*United States v. Gonzales*,
    520 U.S. 1 (1997) ............................................................. 15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................. 12

*Woodall v. Fed. Bureau of Prisons*,
    432 F.3d 235, 247 (3d Cir. 2005) ............................................................. 25

**Statutes**

5 U.S.C. § 553 ............................................................. 28

5 U.S.C. § 706(2)(C) ............................................................. 12

7 U.S.C. § 1506(d) ............................................................. 34

15 U.S.C. § 633(d) ............................................................. 13

15 U.S.C. § 634(b)(1) ............................................................. 33, 34

15 U.S.C. § 636(a) ................................................................. *passim*

15 U.S.C. § 714b(c) ........................................................................ 34

15 U.S.C. § 9005(b) ....................................................................... 14

35 U.S.C. § 318(a) ......................................................................... 17

38 U.S.C. § 8127(d) ....................................................................... 16

42 U.S.C. § 3211(a)(13) .................................................................. 34

132 Stat. 5194 (2018) ................................................................. 8, 21

134 Stat. 281 (2020) ............................................................... *passim*

134 Stat. 620 (2020) ........................................................................ 6

## Other Authorities

13 C.F.R. § 120.110 .................................................................... 7, 22

85 Fed. Reg. 20,811 (2020) ....................................................... *passim*

85 Fed. Reg. 23,451 (2020) ............................................................. 23

Bureau of Justice Statistics, Correctional Populations in the United
  States, 2016 (2018) ................................................................... 22

Bureau of Justice Statistics, Prisoners in 2018 (Apr. 2020) .................... 32

Bureau of Justice Statistics, Probation and Parole in the United
  States, 2016 (2018) ................................................................... 22

*Business Loan Program Temporary Changes; Paycheck Protection
  Program – Additional Revisions to First Interim Final Rule* (June
  12, 2020) ............................................................................ 7, 27

Meredith Cohn et al., *Black Marylanders Make Up Largest Group of
  Coronavirus Cases as State Releases Racial Breakdown for First
  Time*, Baltimore Sun, Apr. 09, 2020 ............................................... 32

Michael Pinard, *Reflections and Perspectives on Reentry and Collateral
  Consequences*, 100 J. Crim. L. & Criminology 1213 (2010) .................... 32

Oxford English Dictionary (3d ed., Mar. 2016) ................................... 14

Webster's Third New Int'l Dictionary (1976) ...................................... 15

## PRELIMINARY STATEMENT

This action challenges the Small Business Administration's ("SBA") and Department of the Treasury's unlawful and irrational decision to categorically deny access to the Paycheck Protection Program (the "PPP") to small businesses owned by individuals with criminal histories. The SBA's actions run directly contrary to the statutory text, which requires that "all" small businesses "shall" be eligible for the PPP, Congress's emergency lifeline to small business during the COVID-19 pandemic. Rather than aiding people and businesses in need—the entire purpose of the PPP—these restrictions do the opposite: they cause irreparable harm to business owners who are disproportionately Black and Latinx and live in communities disproportionately suffering from the COVID-19 pandemic and harmed by the criminal-legal system. In this time of unprecedented crisis, the SBA is imposing an unfair and unlawful barrier for business owners striving to maintain economic security and overcome the severe challenges faced by individuals with criminal histories. This Court should grant a preliminary injunction to ensure that these especially vulnerable American small businesses and their workers are able to benefit from the government's emergency relief program, or else the SBA will continue to redline them out of it.

COVID-19 has devastated the American economy. The spread of the virus—which has infected over 2 million Americans and killed over 100,000—led cities and states to implement stay-at-home orders requiring the shuttering of numerous businesses and decimating those that remained open. Among those hardest hit by the economic fallout from the pandemic are the owners and employees of small

businesses—an engine of the American economy responsible for half of all private-sector employment.  Many small businesses, unable to maintain payroll with little to no revenue coming in the door, were forced to cut hours and pay and to implement layoffs.  As a result of the pandemic, the unemployment rate reached levels not seen since the Great Depression.

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), the largest stimulus program in U.S. history, to provide financial relief to ease the economic suffering caused by the pandemic, including through direct Economic Impact Payments of up to $1,200 per adult. Congress showed particular concern for small businesses and those who work for them through the PPP, which Congress funded with nearly $650 billion.  Congress provided that "any" small business "shall" be eligible to receive an immediate loan guaranteed by the SBA, and that the loan is forgiven *in full* if the funds are used for payroll or certain other expenses.  15 U.S.C. § 636(a)(36)(D).  That is, although called a "loan" program, the PPP is in effect a grant from the federal government to small businesses to enable them to protect the livelihood of their employees.  Congress's purpose is clear: to provide immediate economic relief to *all* American small businesses so that they can continue to pay their workers (and, in many cases, guarantee continued health insurance) during the ongoing COVID-19 crisis.

Notwithstanding Congress's command that "any" small business "shall" be eligible to receive these critical funds, the SBA has intervened to categorically bar certain small businesses and their employees from obtaining aid.  In a series of

Interim Final Rules ("IFR") and bewildering, repeatedly revised application forms, the SBA added unnecessary, confusing, and internally inconsistent eligibility criteria that barred businesses owned (even in part) by individuals with any of a wide variety of past interactions with the criminal-legal system—including individuals under indictment or information, on parole or probation, or with felony convictions—from accessing PPP funds. These restrictions conflict with Congress's unambiguous mandate in the CARES Act. Furthermore, the SBA has failed to explain its decision to categorically exclude these businesses from Congress's broad relief program. The flurry of last-minute changes to the restrictions in conflicting IFRs and application forms—the latest change appeared on the SBA's website late on Friday, June 12, 2020, only days before the June 30 application deadline—suggest that the SBA does not know and cannot decide whether and which criminal history is relevant or why.

The harm from these exclusions is clear: They deny funded payroll to every small business—and therefore the wages of every person who happens to work for them—whose owner has a covered criminal record. The effect is to punish rather than support these individuals' efforts to move beyond their criminal records and achieve financial security and contribute to the economic vitality of their communities. And the exclusions extend even to business owners with unproven, but still pending, criminal charges—denying them their presumption of innocence. (The SBA's ever-changing criteria have exacerbated the problem, leaving small businesses and their workers uncertain about their eligibility as the application period closes.) The SBA's denial of PPP funds compromises the very survival of those businesses—

like Lightning Electric, the business owned by Plaintiff Sekwan Merritt, who was denied PPP funds on the basis of his parole status, and Plaintiff John Garland, who was denied PPP funds on the basis of a pending charge. These small businesses face bankruptcy and dissolution without the immediate funding Congress deemed necessary for them to survive the pandemic.

The SBA's denial of PPP funds to these small businesses also disproportionately harms individuals and communities of color. Reflecting systemic racism in the criminal-legal system, members of those communities are many times more likely to have disqualifying criminal histories than white people. And it is many of these very same communities that are being hit hardest by the coronavirus pandemic. The SBA is thus denying relief where it is most needed.

The SBA's blanket exclusion of businesses owned by individuals with criminal records from the PPP is unlawful because it is contrary to the unambiguous text of the CARES Act and is otherwise arbitrary and capricious. It has caused irreparable harm to Plaintiffs and many others like them. And it flouts the public interest in broadly encouraging the survival of *all* American small businesses and the financial security of *all* their employees, which Congress urgently pursued through the PPP. The SBA's unlawful and harmful exclusions cannot stand.

## STATEMENT OF FACTS

### A. Congress Enacts the Paycheck Protection Program.

Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act" or "the Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), signed into law on March 27, 2020, to provide immediate financial relief from the economic

devastation resulting from the COVID-19 pandemic. In Title I of the CARES Act, designated "Keeping American Workers Paid and Employed," Congress created the PPP. *See generally DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, No. 20-1437, 2020 WL 2988528, at *1 (6th Cir. May 15, 2020) (describing the PPP). Congress designed the PPP to deliver one of the Act's central promises: providing emergency relief to small businesses affected by the COVID-19 pandemic, and protecting the employment, income—and, in many cases, health insurance—of the small-business workforce. *Id.*

Although, formally, PPP funds are distributed to small businesses in the form of loans guaranteed by the SBA, "the PPP is not a loan program" but rather "is a grant or support program" aimed at "small businesses in financial distress." *In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18-13027 T11, 2020 WL 2096113, at *8 (Bankr. D.N.M. May 1, 2020). This is because the CARES Act provides that PPP "loans" will be forgiven to the extent the funds are used for certain purposes, such as for payroll costs, including costs for the provision of group health care benefits and insurance premiums, during a short period following the loan's origination. 15 U.S.C. § 636(a)(36)(A)(viii). The CARES Act provides that the PPP is administered by the SBA under Section 7(a) of the Small Business Act, *id.* § 636(a), and the loans are made by the SBA's participating banks. Congress initially appropriated $349 billion for the program's federally guaranteed forgivable loans. Immediate high demand for the forgivable loans quickly exhausted the initial funding, and Congress thereafter appropriated an additional $310 billion. *See* Paycheck Protection and

Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620 (2020).

The provision of the CARES Act that defines eligibility for the PPP, at the heart of this dispute, is codified at 15 U.S.C. § 636(a)(36)(D). Titled *Increased Eligibility for Certain Small Businesses and Organizations*, it provides: "During the covered period"—that is, from February 15 through June 30, 2020—"*any* business concern … *shall* be eligible to receive a covered loan if the business concern … employs not more than the greater of—(I) 500 employees; or (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern … operates." 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added).

### B. The SBA Imposes Criminal-Record Exclusions on PPP Eligibility.

Shortly after Congress passed the CARES Act, the SBA adopted an Interim Final Rule (the "April IFR") governing the implementation of the PPP. *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020). In order to "provide relief to America's small businesses expeditiously" and in light of "the dramatic decrease in economic activity nationwide," the rule took immediate effect. *Id.*

In the April IFR, the SBA introduced a set of eligibility criteria for the PPP beyond those enumerated in the text of the CARES Act. Relevant here, the SBA decreed: "You are ineligible for a PPP loan if … [a]n owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony

within the last five years." 85 Fed. Reg. at 20,812. The April IFR also invoked eligibility criteria from an earlier rule and agency publication—criteria that the agency promulgated to apply to a *different* SBA loan program. (Those rules differ from the April IFR's statement on the scope of the criminal-record exclusions.[1]) In a subsequent IFR, issued on the afternoon of Friday, June 12, 2020—with the PPP application period set to end on June 30—the SBA again changed its PPP criminal-record eligibility criteria, revising the April IFR to read:

> You are ineligible for a PPP loan if, for example:
>
> * * *
>
> iii. An owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance within the last five years or any other felony within the last year;

*Business Loan Program Temporary Changes; Paycheck Protection Program – Additional Revisions to First Interim Final Rule* (June 12, 2020) ("June IFR").

---

[1] In the April IFR, the SBA invoked eligibility criteria from 13 C.F.R. § 120.110, which the SBA first issued in 1996, and the SBA's interpreting Standard Operating Procedure (SOP) 50 10, which both specified businesses ineligible to receive loans under different SBA programs distinct from the PPP. The scope of the earlier rule differs from the April IFR's criminal-record exclusions, most notably by not categorically excluding business owners based on conviction record. *See* 13 C.F.R. § 120.110(n). Though the SOP purports merely to interpret the earlier rule, it excludes a broader class of individuals, stating that the SBA "cannot provide financial assistance to businesses with Associates who are" subject to *any* criminal charges, instead of only felonies and crimes of moral turpitude. SOP 50 10, at 110.

The SBA explained its change by noting that "a shorter timeframe for felonies that do not involve fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance is more consistent with Congressional intent to provide relief to small businesses and also promotes the important policies underlying the First Step Act of 2018 (Pub. L. 115-391)," *id.*, a statute designed to "reform[ ] sentencing laws that have wrongly and disproportionately harmed the African-American community" and give individuals with criminal history "the chance to re-enter society as productive, law-abiding citizens," President Donald J. Trump, State of the Union (Feb. 5, 2019). But the June IFR left in place the SBA's categorical ban on business owners based on any kind of probation or parole, no matter how old or irrelevant their conviction, and on business owners facing charges for any offense, no matter how minor or unfounded.

Alongside the shifting and inconsistent eligibility criteria announced in the SBA's rules, the agency also published—without opportunity for notice and comment—a flurry of PPP application forms. Each form contained its own criminal-record exclusions, often different from those provided by the various rules. *See* Compl. ¶ 40 (March 31 application form excluded business owners with felony *or misdemeanor* convictions, pleas of nolo contendere, or pretrial diversion going back *seven* years); *id.* ¶ 46–50 (April 3 application form eliminated misdemeanors and altered lookback period); *id.* ¶ 63 (most recent application form published on June 12, 2020).

Elected officials and advocates from across the political spectrum opposed the

SBA's criminal-record exclusions as soon as they were announced. Senators from both parties asked the SBA to revise its exclusions. *See, e.g.*, Compl. ¶ 54 (excerpting and attaching a letter from Senators Rob Portman (R-OH) and Ben Cardin (D-MD) explaining that the PPP "was not intended to exclude business owner[s] who have made mistakes, paid their debt, and turned their lives around"); *see also id.* ¶¶ 52–55 (collecting legislator criticism). In the IFR comment period—which occurred after the April IFR had taken immediate effect—comments from a diverse set of organizations questioned the legality and logic of the restrictions. For example, Right on Crime—a "national campaign to promote successful, conservative solutions on American criminal justice policy"—joined seven other conservative groups to encourage the SBA to "tailor the Final Interim Rule to reflect common-sense." *Id.* ¶ 56; *see also id.* ¶¶ 56–57 (collecting criticism from advocacy organizations). Yet the SBA offered no explanation of the basis for the exclusions, even as the SBA continued to revise them in conflicting publications.

### C. Plaintiffs Are Denied Vital Assistance During the COVID-19 Pandemic.

One Plaintiff in this case, Sekwan Merritt, is a Black American small-business owner who has rebuilt his life after interactions with the criminal-legal system when he was a younger man. In 2012, Merritt pleaded guilty to possession and possession with intent to distribute narcotics in Maryland; he served five years at the Maryland Correctional Institution—where he worked diligently to ensure that he would be able to become self-sufficient upon reentry—and remains on parole through 2022. Merritt Decl. ¶ 9. After he was released, in October 2017, Merritt started Plaintiff Lightning

Electric, an electrical contracting business in Baltimore, Maryland, with a mission of serving as an example for the next generation of minority contractors and providing opportunity and hope for formerly incarcerated individuals. *Id.* ¶¶ 4–6. Lightning Electric provides work for five contracted electricians—four were formerly incarcerated—all of whom Merritt endeavors to educate about the contracting business with the hopes that they, too, can sbecome entrepreneurs. *Id.* ¶¶ 13–15.

In the spring of 2020, Lightning Electric's business ground to a halt as a result of the COVID-19 pandemic. Lightning Electric was forced to shut operations almost completely, and Merritt was unable to pay the electricians who worked for the company. *Id.* ¶ 19. Despite its current lack of work, Lightning Electric still has approximately $9,000 in biweekly payroll expenses, along with other overhead costs. *Id.* ¶¶ 25–26. Without an influx of cash, Lightning Electric may be forced to fold. *Id.* ¶ 28. Merritt, seeking to benefit from Congress's promise of emergency aid, applied for PPP funds on April 15, 2020, through his bank, Wells Fargo. *Id.* ¶¶ 20–21. On the application, he encountered questions about his criminal history, to which he answered "yes" in light of his current parole status. *Id.* ¶ 22. Upon submitting his application, Merritt was immediately rejected. *Id.* ¶ 23. Had Merritt received PPP funds, he would have been able to pay his workers during the time when business operations were shut. *Id.* ¶ 26. Instead, Merritt has been pouring his own and his family's savings into the business to keep the company going. *Id.* ¶ 27.

A second Plaintiff, John Garland, owns and operates a graphic design franchise, Plaintiff Fastsigns Bethpage ("Fastsigns"), in Bethpage, New York.

Garland Decl. ¶ 26. As a result of the pandemic, Fastsigns' business has plummeted, as many of its primary business clients face economic distress. *Id.* ¶ 24. Garland began applying for PPP funds on April 10, 2020. *Id.* ¶ 27–28. The application form stated that his loan would not be approved if he had a pending misdemeanor charge, which he does. *Id.* ¶ 27–28. (In December 2019, Garland was charged with petit larceny and a violation of an order of protection relating to a prior domestic violence offense. *Id.* ¶¶ 9–10. Garland pleaded not guilty in February 2020, but because of limited court access resulting from the COVID-19 pandemic, the charge remains pending. *Id.* ¶ 11.) Because of the certain denial of his loan, Garland discontinued his application. He consulted with the business's bank, which confirmed that its PPP application also contains this disqualifying question. *Id.* ¶ 29.

A third Plaintiff, Defy Ventures, Inc. ("Defy"), is a nationwide nonprofit organization with chapters in New York, California, Connecticut, and Illinois (along with licensed affiliates in Colorado and Washington). Defy provides training, funding, and continued support to entrepreneurs with a history of incarceration. *See* Glazier Decl. ¶¶ 4–5, 6–15. Since its founding in 2010, Defy has worked with 5,200 entrepreneurs-in-training, the vast majority of whom are people of color. *Id.* ¶ 16. As a result of the COVID-19 pandemic, many of the businesses run by Defy program participants have faced existential financial distress. *Id.* ¶¶ 21–22. After a program graduate brought the SBA's criminal-record exclusions to Defy's attention, Defy devoted itself to understanding the SBA's rules and application form, researching and following the SBA's constantly changing restrictions, advising Defy graduates on

applying for PPP funds, and locating alternative funding sources for graduates excluded from the PPP (including looking into the possibility of Defy providing funding itself). *Id.* ¶¶ 20–31. The SBA's exclusions frustrate Defy's mission and force it to divert critical resources, while threatening the security and livelihood of the people it serves. *Id.* ¶¶ 32–34.

## ARGUMENT

A party seeking a preliminary injunction must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." W*inter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). Plaintiffs satisfy each element.

**I.  Plaintiffs are likely to succeed on the merits because the SBA's blanket criminal-record exclusions are contrary to the CARES Act and arbitrary and capricious.**

**A. The text of the CARES Act unambiguously requires that "any" small business "shall" be eligible for the PPP.**

The Administrative Procedure Act ("APA") bars agencies, like the SBA, from taking action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Where, as here, "a challenger asserts that an agency action conflicts with the language of a statute," this Court applies the familiar analytical framework set forth in *Chevron, U.S.A., Inc. v Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). *Sierra Club v. U.S. Army Corps of Eng'rs.*, 909 F.3d 635, 643 (4th Cir. 2018). This framework requires the Court to "give plain and

unambiguous statutes their full effect." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 861 F.3d 502, 506 (4th Cir. 2017). Only "if the statute is ambiguous, courts then move … to Chevron's second step and defer to the agency's interpretation so long as it is based on a permissible construction of the statute." *Sierra Club*, 909 F.3d at 643 (citation and alterations omitted). Here *Chevron*'s first step is also its last: the CARES Act unambiguously forecloses the SBA's attempt to exclude businesses from participating in the PPP based on their owners' interactions with the criminal-legal system.

> 1.   The text of the CARES Act mandates that all businesses that satisfy the stated size and timing criteria are eligible for relief—leaving no room for the SBA's criminal-record exclusions.

Congress inserted the PPP into the existing SBA 7(a) loan program but made clear its intent that the PPP's forgivable loans are strikingly different. In particular, the PPP's so-called "loans" are not ordinary SBA loans; they are in effect conditional grants designed to ensure continued employment for employees of American small businesses. *See supra* at 5.

The Act makes this distinction expressly, explaining that the SBA "may guarantee [PPP] loans under the same terms, conditions, and processes" as other SBA loans, "*[e]xcept as otherwise provided in this paragraph.*" 15 U.S.C. § 636(a)(36)(B) (emphasis added). This provision means that the SBA's ordinary regulatory authority under the Small Business Act, allowing it to "establish general policies" governing the "granting and denial" of loans, applies to the PPP but may be (and in many cases was) superseded by other provisions of the CARES Act. 15 U.S.C. § 633(d). Most notably, the PPP promises *full* loan forgiveness so long as the recipient

uses the funds for payroll costs and certain other enumerated purposes. 15 U.S.C. § 9005(b). That marks a sharp departure from the SBA's ordinary lending practices. Thus, although the PPP was to be administered by the SBA, Congress ensured that its unique emergency grant program was far from business as usual.

The provision at issue here represents another such departure, reflecting who is eligible to receive the promised funds in the first place. Section 636(a)(36)(D), titled "Increased Eligibility for Certain Small Businesses and Organizations," dictates mandatory and comprehensive PPP eligibility. According to the Increased Eligibility Provision, "During the covered period … *any* business concern … *shall* be eligible to receive a covered loan if the business concern … employs not more than the greater of— (I) 500 employees; or (II) [applicable industry size standards]." 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added). This provision unambiguously provides that *any* business concern is eligible for the PPP so long as it (1) during the covered period (2) satisfies either of the two applicable size requirements.

The key words are "any" and "shall." The Supreme Court has repeatedly interpreted those words to mean what they say. Starting with "any," the Supreme Court has explained that "[w]hen used (as here) with a 'singular noun in affirmative contexts,' the word 'any' ordinarily 'refer[s] to a member of a particular group or class without distinction or limitation' and in this way 'impl[ies] *every* member of the class or group.'" *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (alteration in original) (quoting Oxford English Dictionary (3d ed., Mar. 2016)); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 220 (2008) ("Congress' use of 'any' to modify 'other

law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind."); *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New Int'l Dictionary 97 (1976))). Here, that means that the Increased Eligibility criteria applies to *every* business concern that satisfies the stated criteria.

Moving to "shall," or what the Supreme Court has called "the mandatory 'shall,'" that term, the Court has explained, "creates an obligation impervious to … discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). This means that if the preconditions to "shall" are satisfied—here, the timing and size requirements—the result *must* necessarily follow—here, PPP eligibility. Accordingly, when the Increased Eligibility Provision says that "*any* business concern *shall* be eligible to receive a covered loan if" it satisfies the specified timing and size criteria, it means that *every* business concern that satisfies those criteria *must* be eligible.

The enumeration of specified eligibility criteria—here, that during the covered period a business concern employ not more than a certain number employees—confirms that no further exclusions may apply to eligibility. Whether it is called *expressio unius* or just plain common sense, Congress's express listing of eligibility criteria confirms that it did not authorize any additional restrictions on eligibility.

Two recent Supreme Court cases considering similar statutes confirm that the eligibility criteria enumerated in section 636(a)(36)(D)(i) are mandatory and comprehensive, leaving no room for the SBA to engraft its own eligibility criteria onto the statute's unambiguous text. In *Kingdomware Technologies*, 136 S. Ct. 1969, the Supreme Court addressed a provision of the Veterans Benefits, Health and Information Technology Act of 2006, a targeted intervention into the statutory scheme governing agency contracting, aimed at encouraging contracting with veteran-owned small businesses. *Id.* at 1973. The provision at issue required that, "[e]xcept as provided" in two enumerated subsections, the Department of Veterans Affairs "*shall* award contracts" through a bidding process known as the "Rule of Two" that restricted competition to veteran-owned small businesses. 38 U.S.C. § 8127(d) (emphasis added). The government nonetheless argued that the Department retained its discretion under preexisting regulations to use a different process for entering into certain kinds of contracts, without limiting competition to veteran-owned small businesses. See *Kingdomware Techs.*, 136 S. Ct., at 1976–77. The Supreme Court unanimously disagreed, concluding that "Congress' use of the word 'shall' demonstrates that [the statute] mandates the use of Rule of Two in *all* contracting." *Id.* (emphasis added). As in *Kingdomware Technologies*, here the mandatory "shall" along with specifically enumerated criteria plainly override the preexisting framework, and thus leave no room for the government to rely on prior rules or regulations that impose different criteria.

The statutory language addressed in *SAS Institute*, 138 S. Ct. 1348, is also

closely analogous.  There, the Supreme Court considered a statute defining the scope of *inter partes* review in the U.S. Patent Office:  "If an *inter partes* review is instituted and not dismissed the Patent Trial and Appeal Board *shall issue* a final written decision with respect to the patentability of *any patent claim challenged by the petitioner*...."  *Id.* at 1354 (emphasis in original) (quoting 35 U.S.C. § 318(a)).  Notwithstanding Congress's use of "any" and "shall," the government contended that the agency was not required to decide the patentability of *every* claim.  *Id.*  Again, the Supreme Court had none of it.  The Court determined that the "plain text of [the statute] supplies a ready answer," as the "shall" "any" "directive is both mandatory and comprehensive" and "[i]n this context, as in so many others, 'any' means 'every.'"  *Id.* at 1353–1355.  "[W]hen [the statute] says the Board's final written decision 'shall' resolve the patentability of 'any patent claim challenged by the petitioner,'" the Court concluded, "it means the Board *must* address *every* claim," "mak[ing] this an easy case."  *Id.* at 1354–55 (emphasis in original).  The Court's straightforward statutory interpretation in *SAS Institute* is similarly applicable here:  When the CARES Act says that "any business concern" of a certain size "shall be eligible" to receive a PPP loan, it means that *every* such business concern is eligible and accordingly forecloses the government from declaring some such businesses categorically ineligible.

Had Congress intended for the SBA to apply preexisting additional eligibility criteria to the PPP, it would have drafted the CARES Act to do so.  For example, Congress could have said that "any otherwise eligible business concern" is eligible if it satisfies the broader size requirements set forth in the PPP.  Such language would

have established that, in the PPP, Congress was merely changing the size requirements, but otherwise leaving intact the SBA's background regulations governing loan eligibility. But Congress did not do that. Instead, Congress provided that "*any*" business "shall" be eligible so long as it satisfies the enumerated criteria, and thus unambiguously foreclosed the SBA's effort to add additional, unwritten eligibility criteria above and beyond those that Congress specified.

The government has elsewhere unsuccessfully argued that Congress preserved the SBA's authority to apply its preexisting eligibility criteria by specifying that, "*[e]xcept as otherwise provided in this paragraph*, the [SBA] may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." *See DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, No. 20-cv-10899, 2020 WL 2315880, at *12 (E.D. Mich. May 11, 2020) (quoting 15 U.S.C. § 636(a)(36)(B)). But that grant of discretion to the SBA applies only "except as otherwise provided" in the CARES Act. And Congress has, unambiguously, "otherwise provided" what the eligibility requirements are to participate in the PPP: "any" business that satisfies the stated size criteria "shall" be eligible. *See id.* at *13 ("The flaw in this argument is that another provision of the PPP *does* 'otherwise provide[ ]' that the SBA may not import its historical eligibility limitations into the PPP. … [T]he provision of the PPP that specifically addresses eligibility bars the SBA from doing so.").[2]

---

[2] As to several preexisting statutory requirements, Congress made doubly clear that the stated criteria were the *only* PPP eligibility criteria. For example, the CARES Act provides that PPP applicants are not required to demonstrate they are unable

Any claim that Congress ought to have spoken more directly to the PPP eligibility of business owners with criminal records must therefore fail.[3]  As the Supreme Court said just yesterday, there is no such thing as "a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception."  *Bostock v. Clayton Cty., Georgia*, No. 17-1618, 590 U.S. __, __ (U.S. June 15, 2020) (slip op. at 19).  "Instead," the Court went on, "when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."  *Id.*  That is the beginning and end of this case.

      2.    <u>This interpretation of the CARES Act's text is consistent with the purpose of the PPP.</u>

Interpreting the CARES Act to extend relief to *any* small business that satisfies Congress's stated eligibility criteria (and not merely a redlined subset of those small businesses) is consistent with Congress's basic purposes of rescuing the national economy and getting money into the hands of vulnerable small businesses and workers.  As one district court put it, "when the COVID-19 pandemic destroyed the economy and threw tens of millions of Americans out of work … Congress did not pick winners and losers."  *DV Diamond Club*, 2020 WL 2315880, at *1.  "Instead,

---

to obtain credit elsewhere, as is ordinarily required by statute for SBA loans.  15 U.S.C. § 636(a)(36)(I).  And the Act likewise expressly includes nonprofits, veterans organizations, and Tribal business concerns as eligible, in addition to "business concerns."  *Id.* § 636(a)(36)(D)(i).

[3] To the extent Congress has previously spoken to criminal history it is only to authorize the SBA to perform criminal background checks, 15 U.S.C. § 636(a)(1)(B), but any eligibility restriction that the government might attempt to infer from this provision is overridden by the CARES Act's express eligibility requirements.

through the PPP, Congress provided temporary paycheck support to *all* Americans employed by *all* small businesses…." *Id.*

The employee-focused nature of the PPP—evident from the very title of the portion of the CARES Act in which it is included, "Keeping American Workers Paid and Employed"—explains Congress's decision to prevent the SBA from applying additional employer eligibility restrictions.  From the perspective of a Congress focused on providing salary and basic benefits to American employees affected by the COVID-19 pandemic, what matters is simply that the small business exists and has stepped forward to ask for relief for its workers.  The goal of the PPP is to prevent or reverse employee layoffs by *any* small business employer.  It is thus immaterial whether the business satisfies additional eligibility requirements that the SBA unilaterally imposes.

More still, the structure of the "loans" made under the program illustrates further why there is no basis for the SBA to impose additional eligibility criteria.  Congress appropriated $349 billion and then an additional $310 billion to guarantee *fully forgivable* PPP funding, provided the funds were used for dedicated purposes.  Given the guarantee of federally funded repayment, there is no sound basis for the SBA to impose additional restrictions on loan eligibility or to treat the PPP like an ordinary SBA loan program where the government has an interest in being repaid.  Creditworthiness and ability to repay are simply not concerns for the PPP.  Nor is there a concern about creating a perception or implication of endorsement, *i.e.*, that the government has some ongoing involvement in a particular business.  This is one-

way, one-time relief funding.

In contravention of this clear statutory purpose to provide aid to any small business, the SBA's criminal-record restrictions would pick winners—or at least losers—by categorically precluding many American small businesses from receiving PPP funds without any individualized consideration of their applications. In particular, a business would be categorically ineligible if one of its owners is incarcerated, on probation, or parole in connection with *any* crime, however minor and however far in the past, or has a recent felony conviction. The SBA thus denies Congress's promise of economic relief, and the opportunity for a second-chance, to small-business owners, like Sekwan Merritt, who are on parole and actively working to rebuild their lives and to contribute to the economic vitality of their communities after a period of incarceration, the very rationale that spurred passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). And the SBA also denies relief to business owners who have only been *charged* with a crime—and thus are presumed innocent—like small-business owner John Garland. The SBA's criminal-record exclusions in turn flatly preclude all of the employees of any such business from receiving the federal grant of payroll and health-insurance expenses provided by the CARES Act.

The SBA did not bother estimating the number of businesses and individuals precluded from PPP relief by any of the several iterations of its blanket criminal-record exclusions, but the number is surely substantial. In 2016, 6.6 million individuals were incarcerated and another 4.5 million were on parole or probation.

*See* Bureau of Justice Statistics, Correctional Populations in the United States, 2016

(2018); Bureau of Justice Statistics, Probation and Parole in the United States, 2016

(2018). And excluding individuals with criminal history has a disparate impact on

communities of color: 2% of white business owners have been incarcerated, but the

proportion is 15% for Black business owners and 10% for Latinx business owners.

*See* Wildeman Decl. ¶¶ 1, 11. This means that the program designed to help

communities stabilize during the COVID-19 pandemic is being disproportionately

(and arbitrarily) denied to the very communities that have been hardest hit by the

virus. *See infra* at 32–33. Simply put, the SBA is barring the emergency room door

to those businesses who most need the urgent care Congress guaranteed to all small

businesses.

3.  Courts have found that the text of the CARES Act
    unambiguously bars analogous SBA exclusions from the PPP.

Multiple courts—including the two appellate courts to consider the issue—

have found that the text of the CARES Act unambiguously bars the SBA from

engrafting additional eligibility restrictions onto the program.

The Sixth Circuit considered this issue in the context of rejecting the SBA's

extra-statutory exclusion of sexually oriented businesses from receiving relief under

the PPP. (In addition to the criminal-record related exclusions, the SBA's IFR also

excluded businesses that "[p]resent live performances of a prurient sexual nature"

from accessing PPP loans. 13 C.F.R. § 120.110(p); *see* April IFR (incorporating 13

C.F.R. § 120.110(p)).) In *DV Diamond Club of Flint, LLC v. Small Business*

*Administration,* several businesses challenged that exclusion and were granted a

preliminary injunction by the district court, which concluded that the plaintiffs had "shown a strong likelihood that they will prevail on the merits of their claim that the [IFR] is invalid" because "it directly conflicts with the PPP." *DV Diamond Club*, 2020 WL 2315880, at *9. "[T]he text of the PPP makes clear," the district court explained, "that every business concern meeting the statutory criteria is eligible for a PPP loan during the covered period," as "Congress's express listing of these two eligibility criteria indicates that Congress did not intend there to be any other criteria for loan guarantee eligibility." *Id.* at *10. In denying the SBA's request for a stay of the injunction, the Sixth Circuit agreed: "[B]y specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances." *DV Diamond Club*, 2020 WL 2988528, at *2. "That broad interpretation," the Sixth Circuit reasoned, "comports with Congress's intent to provide support to as many displaced American workers as possible…." *Id.*

The Seventh Circuit likewise denied a similar motion by the SBA seeking to stay another district-court injunction against the SBA's exclusion of sexually oriented businesses from the PPP. *See* Order, *Camelot Banquet Rooms, Inc. v. Carranza*, No. 20-1729 (7th Cir. May 20, 2020), ECF No. 17 (denying without explanation the SBA's motion for a preliminary injunction); *see also Camelot Banquet Rooms v. U.S. Small Bus. Admin.*, No. 20-C-601, 2020 WL 2088637, at *7 (E.D. Wis. May 1, 2020) (concluding that the restriction "serves no statutory purpose and exceeds the scope of the regulatory authority Congress granted the SBA").

This issue has also been addressed in challenges to the SBA's exclusion of firms

in bankruptcy from the PPP. *See* 85 Fed. Reg. at 23,451. Several courts have concluded that the text of the CARES Act bars the SBA from applying additional non-statutory eligibility criteria to exclude bankrupt debtors from the PPP. *See, e.g.*, *In re Roman Catholic Church of Archdiocese of Santa Fe*, 2020 WL 2096113, at \*7 (finding that because "the CARES Act directly addresses the PPP eligibility requirements," the SBA "had no authority … to change the eligibility requirements"); *In re Hidalgo County Emergency Serv. Found.*, No. 19-20497, 2020 WL 2029252, at \*2 (Bankr. S.D. Tex. Apr. 25, 2020) (granting a temporary restraining order). For example, in *In re Skefos*, No. 19-29718-L, 2020 WL 2893413 (Bankr. W.D. Tenn. June 2, 2020), the court quoted at length from the textual analysis of the district court and Sixth Circuit in *DV Diamond Club* to find that "Congress expressed its intent through the CARES Act and the PPP that emergency support be provided to American workers facing the loss of income and, in many cases, health insurance, in the face of the worst global pandemic in more than 100 years." *Id.* at \*10. Accordingly, the court concluded, "the Administrator was not authorized to exclude American workers on the basis that they happened to be employed by a debtor in bankruptcy or even more remotely … by an entity whose owner is a debtor in bankruptcy." *Id.*[4]

   In light of the CARES Act's unambiguous text and its purpose, the SBA's

---

[4] Although one district court and several bankruptcy courts have disagreed and found the act "silent" on the eligibility of debtors in bankruptcy, *see, e.g.*, *Diocese of Rochester v. U.S. Small Bus. Admin.*, No. 6:20-CV-06243 EAW, 2020 WL 3071603, at \*8 (W.D.N.Y. June 10, 2020), the plain statutory text is to the contrary: It provides that "any" business that satisfies the stated size requirements "shall" be eligible, and the natural meaning of "any" is "any."

attempt to introduce additional criminal-record restrictions on eligibility for the PPP exceeds the agency's statutory authority.

### B. The SBA's criminal-record exclusions are arbitrary and capricious.

Even if the CARES Act's plain text allowed the SBA to impose additional restrictions on PPP eligibility—which, as explained above, it unambiguously does not—the SBA nonetheless disregarded its most basic obligations under the APA. The SBA failed to promulgate rules and policy "based on a consideration of the relevant [statutory] factors" and to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962); *Bowman Transp. Inc. v. Ark.-Best Freight System*, 419 U.S. 281, 285 (1974)). Instead it issued a series of changing and inconsistent (and, as explained above, unlawful) restrictions on PPP eligibility entirely without explanation.

The SBA's decision to flatly bar applicants based on their criminal records was not "based on a consideration of the relevant [statutory] factors." *Id.* (citation omitted); *see Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 247, 249 (3d Cir. 2005) (holding regulations unlawful and explaining "whether the [agency] may consider additional factors is separate" from "whether it can ignore altogether the very factors delineated by Congress in the governing statute itself"). As explained above, and as the SBA's April IFR recognizes, Congress designed the CARES Act and the PPP to "provide immediate assistance to individuals, families, and businesses affected by the

COVID-19 emergency." *See* 85 Fed. Reg. at 20,811–12. The SBA ignored the PPP's central promise of funded loan forgiveness and access for those most in need. It treated the PPP like any ordinary SBA loan program and interposed many of the same barriers as the SBA's 7(a) program, which has an altogether different purpose.

To the contrary, "[t]he broad purposes of both the CARES Act and the Small Business Act would be served by allowing the plaintiffs to participate in the program on the same terms as any other small business." *Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *5. Categorically excluding small-business owners—like Sekwan Merritt—for their probation or parole status for offenses potentially in the distant past, and business owners—like John Garland—with only pending charges, and in turn denying continued pay to their businesses' workforce during a pandemic and economic crisis cannot be squared with the capital-access and relief-driven aims of the CARES Act. As one court recently put it, "[p]erhaps nothing illustrates the arbitrariness and caprice of the [SBA's] exclusion rule better than" its perverse effect: "[T]o implement a Congressional program intended to protect American workers from unemployment and loss of health insurance, SBA arbitrarily eliminated all workers employed by" myriad excluded applicants, without considering the harm to excluded small businesses and their employees. *In re Skefos*, 2020 WL 2893413 at *12.

It should come as no surprise, then, that the SBA's could not furnish "*any* explanation" for its decision, "let alone a satisfactory one." *Sierra Club v. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018). In its April IFR, the agency said precisely nothing about why it imposed criminal-history eligibility exclusions. It merely

described the restrictions without justification, noting that it was importing criminal-record restrictions established by regulation and guidance that govern the SBA's separate 7(a) loan program. *See* 85 Fed. Reg. at 20,812. But, as courts have recognized, the conditions that apply to traditional 7(a) loans cannot logically be imported to the PPP's conditional grants, given the different purposes and structures of these programs. *See In re Roman Catholic Church of Archdiocese of Santa Fe*, 2020 WL 2096113, at *6 (explaining that the PPP is "not a loan program at all" but rather "is a grant or support program."). And even if those conditions could be imported wholesale, the restrictions set out in the April and June IFRs and associated application forms, in fact, diverge from the 7(a) conditions—without acknowledgment or explanation—to exclude yet more small-business owners. *See supra* at 8.

The only thing the SBA *has* said about the criminal-record exclusions underscores their irrationality. In its June 12 revision to the IFR, the SBA narrowed the scope of disqualifying past felony convictions: "After further consideration," the revised IFR explains, "the Administrator, in consultation with the Secretary of the Treasury (the Secretary), has determined that a shorter timeframe for felonies that do not involve fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance is *more consistent* with Congressional intent to provide relief to small businesses." *Business Loan Program Temporary Changes; Paycheck Protection Program – Additional Revisions to First Interim Final Rule* (June 12, 2020) (emphasis added). But the SBA's analysis skips a critical step: establishing and explaining, as it must, that any of the restrictions are

at all consistent with congressional intent in the first place. "This complete lack of explanation for an important step in the agency's analysis [i]s arbitrary and capricious." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 494 F.3d 188, 204 (D.C. Cir. 2007). It also underscores that the SBA's prior criteria—which the agency used to reject numerous applicants—were arbitrary and capricious at the time.

Making matters worse, the SBA has been markedly inconsistent across its various and changing articulations of the criminal-record exclusions. The SBA's April IFR restricted a broader category of individuals than the incorporated regulation and guidance governing 7(a) loans to exclude *all* applicants with felony convictions of any kind within the last five years, regardless of whether on probation or parole. *See* 85 Fed. Reg. at 20,811–12. The SBA's April application form was broader still, establishing additional hurdles to eligibility based on an applicant's arrest and including misdemeanor charges.[5] Then, on June 11, 2020—with the PPP application period set to close on June 30—the SBA changed the game again, releasing a revised form removing a question regarding pretrial diversion. Then, again, late on June 12, 2020, the SBA released a *new* Interim Final Rule revising the April 15 IFR—still

---

[5] All of the additional restrictions imposed by the SBA's application form that do not appear in the IFR are likewise defective due to the agency's failure to engage in notice and comment, under 5 U.S.C. § 553. *See Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 620 (4th Cir. 2018) (holding agency pronouncements legislative because they "adopt[] a new position inconsistent with existing regulations, or otherwise effect[] a substantive change in existing law or policy" (quoting *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014)); *Guilford Coll. v. McAleenan*, 389 F. Supp. 3d 377, 392 (M.D.N.C. 2019) (same).

without explanation—and yet another revised application form.

The SBA's flurry of eleventh-hour changes are independently fatal. "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Michigan v. E.P.A.*, 135 S. Ct. 2699, 2706 (2015) (quoting *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 374 (1998)). Based on these "'unexplained inconsistenc[ies]' and sudden alterations, the SBA apparently does not know and cannot decide whether and which criminal history is relevant, or why. *See Casa De Maryland v. Dep't of Homeland Sec.*, 924 F.3d 684, 704 (4th Cir. 2019). The SBA's incoherent actions are "arbitrary and capricious, and therefore unlawful." *Id.*

While the SBA continues to change its mind, the agency's whims impact the lives and livelihoods of real people—people striving to overcome the many economic challenges that already attach to a criminal record and trying to run a business during a time of crisis—whose eligibility for loans are changing on a daily basis as the program's application period draws to a close. Even small-business owners who might now be eligible for the PPP but were previously excluded risk being denied access to essential funds if they (reasonably) do not hourly monitor the SBA's website to track its rapidly evolving treatment of criminal history across interim regulation, guidance, and forms. This arbitrary and irrational behavior is precisely what the APA guards against.

## II. Plaintiffs will suffer irreparable harm in the absence of an injunction, and granting an injunction is in the public interest.

The PPP is a "first-come, first-served" limited pool of funds with an application

deadline of June 30, 2020. *Camelot Banquet Rooms*, 2020 WL 2088637, at *11. Without immediate relief, Plaintiffs may be forever barred from accessing the funds Congress offered to any business concern that satisfy the statutory size and timing requirements.

This harm is irreparable because Plaintiffs will lose any access to funds with no alternative damages remedy available. *See Camelot Banquet Rooms*, 2020 WL 2088637, at *11 ("[T]he inability to obtain damages implies that any harm the plaintiffs suffer between now and the end of the case will be irreparable."). Once the June 30 deadline passes, "there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). The inability of business owners with criminal history to access PPP funds thus cannot be remedied without immediate injunctive relief.

The harm is especially severe in this case. As set forth in Sekwan Merritt's appended declaration, in the absence of PPP funds, he has been unable to pay his workers and risks losing the business's reputation and customer relationships. Merritt Decl. ¶¶ 17, 24, 26. Instead, he has been putting his and his family's savings into Lightning Electric just to keep it afloat. *Id.* So too for John Garland's business, Fastsigns, which Garland fears may not survive this crisis. *See* Garland Decl. ¶ 32.

Like so many small businesses, for Lightning Electric and Fastsigns and many of the companies Defy Ventures pours its resources into advising, the only options are PPP or likely closure. *See Camelot Banquet Rooms*, 2020 WL 2088637, at *12 ("[A]s a general matter, it is reasonable to infer that *any* small business, regardless

of the services and/or products it provides, would have trouble surviving if forced to close its doors for two months followed by a limited, piecemeal reopening."). This harm is irreparable. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (recognizing that irreparable harm exists where "the moving party's business cannot survive absent a preliminary injunction"); *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 500 (4th Cir. 1981) ("[T]he right to continue a business is not measurable entirely in monetary terms." (citation omitted)).

The public interest further supports allowing Plaintiffs to access the PPP. The Sixth Circuit put it clearly: "The stated purpose of the PPP is to protect the employment and livelihood of employees. Thus, the public interest is served in guaranteeing that any business, including plaintiffs', receive loans to protect and support their employees during the pandemic which, we can all agree, constitutes extraordinary circumstances." *DV Diamond Club*, 2020 WL 2988528, at *3. In the wake of the most severe global pandemic in a century and in light of government restrictions on business and travel that dramatically impair the ability of small businesses to compensate their employees, Congress acted swiftly and expansively to provide emergency support for all employees of any small business through the creation of the PPP. To deny this funded promise of employment and pay (and in many cases health insurance) to countless small-business workers during this national crisis, based solely on a business owner's criminal record, flouts the public interest and the text of the CARES Act. And the confusion caused by the SBA's

inconsistent and changing articulation of its invented restrictions only broadened the scope of businesses wrongfully excluded from the PPP.

The harm to the public interest caused by the SBA's criminal-record exclusions is yet more severe because the exclusions work to disproportionately harm already vulnerable populations—in particular, Black and Latinx small-business owners. The barriers facing individuals with criminal records—in particular in the form of the denial of employment opportunities—are well known. *See generally* Michael Pinard, *Reflections and Perspectives on Reentry and Collateral Consequences*, 100 J. Crim. L. & Criminology 1213, 1218–19 (2010) ("Given the breadth and permanence of collateral consequences, [ex-offenders] are perhaps more burdened and marginalized by a criminal record today than at any point in U.S. history."). And the likelihood of past incarceration is many times greater for Black and Latinx business owners than it is for their White counterparts. *See* Wildeman Decl. ¶¶ 1, 11. Moreover, the SBA's exclusion comes as Americans nationwide protest the systemic effects of the criminal-legal system on Black communities. *See, e.g.*, Bureau of Justice Statistics, Prisoners in 2018, at 9 (Apr. 2020) (showing that Black Americans are incarcerated at a rate five times that of White Americans).

Still more emerging data has shown that, in Maryland as elsewhere, "[t]he rate of coronavirus infections and related deaths is higher among African American[s] than whites or other groups." Meredith Cohn et al., *Black Marylanders Make Up Largest Group of Coronavirus Cases as State Releases Racial Breakdown for First Time*, Baltimore Sun (Apr. 09, 2020), https://www.baltimoresun.com/coronavirus/bs-

md-coronavirus-race-data-20200409-ffim7y4bljcz3hjk4dmt773mp4-story.html. The SBA's criminal-record restrictions thus work to exclude disproportionately minority-owned businesses from relief at a time when Black communities are disproportionately impacted by the COVID-19 pandemic. The public interest demands immediate relief.

### III. This Court can and should enjoin enforcement of the challenged SBA criminal-record exclusions.

For the reasons set forth above, this Court should preliminarily enjoin the enforcement of challenged provisions of the IFR and application form, and should extend the application deadline 21 days, to July 21, 2020, for applicants wrongfully excluded under the challenged criminal-record exclusions. To effect this relief, this Court should require the SBA to reserve PPP funds for such applicants.

As federal courts have uniformly recognized, injunctive relief is available against the SBA, as with other federal agencies, in its policymaking capacity. *See, e.g.*, *DV Diamond Club*, 2020 WL 2315880, at *7–8; *In re: Springfield Med. Care Sys., Inc.*, No. 19-10285, 2020 WL 2311881, at *4 (Bankr. D. Vt. May 8, 2020). Thus 15 U.S.C. § 634(b)(1), which bars "attachment, injunction, garnishment, or other similar process … against the Administrator or his property" when the SBA participates in commercial activity, imposes no barrier to granting the requested relief. *See generally DV Diamond Club*, 2020 WL 2315880, at *7 (rejecting the SBA's argument to the contrary). As an initial matter, that provision applies only to the SBA and its Administrator, so does not address relief where, as here, "plaintiffs have also sued … Steven Mnuchin in his official capacity as Secretary of the Treasury" and the

Department of the Treasury. *Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *3–*4. And, in any event, the provision does not address this kind of suit or relief— one seeking to enjoin the SBA its policymaking capacity. *See id.* Section 634(b)(1) parallels the sue-and-be-sued clauses in many federal statutes creating agencies that, like the SBA, sometimes participate in commercial activity. *See, e.g.*, 42 U.S.C. § 3211(a)(13) (Secretary of Commerce); 15 U.S.C. § 714b(c) (Commodity Credit Corporation); 7 U.S.C. § 1506(d) (Federal Crop Insurance Corporation). These provisions are designed to inoculate those agencies from state-law garnishment and similar actions when they engage in commercial activity; they are "not intended to render the agency immune from injunctive relief in situations where the agency has exceeded its statutory authority and where an injunction would not interfere with the agency's internal operations." *Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *3–4 (citing *FHA v. Burr*, 309 U.S. 242 (1940)); *see also In re Gateway Radiology Consultants, P.A.*, No. 8:19-BK-04971-MGW, 2020 WL 3048197, at *8 (Bankr. M.D. Fla. June 8, 2020) (explaining the legislative history of the SBA's sue-and-be-sued clause).

In the present case, as in other recent challenges to the SBA's implementation of the CARES Act, "the plaintiffs only seek to set aside unlawful agency action," not "to attach the SBA's assets or otherwise interfere with its internal operations," so Section 634(b)(1) does not apply. *Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *3–4; *In re Gateway Radiology Consultants, P.A.*, 2020 WL 3048197, at *9. No court considering an injunction against the SBA under the CARES Act has held to

the contrary. As another district court warned, before issuing a preliminary injunction against the SBA: "If § 634(b)(1) means that the SBA may never be enjoined, then a court could not enjoin" a "policy stating that it will extend small business loans only to companies owned by white men . . . even though it would be blatantly unconstitutional." *Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *3–4.

In addition to enjoining the challenged conditions, this Court should order the SBA to extend the PPP application deadline, which is currently set to close on June 30, 2020, for 21 days as to those applicants unlawfully excluded under the challenged criminal-record exclusions. *See Am. Acad. of Pediatrics v. Food & Drug Admin.*, 399 F. Supp. 3d 479, 483 (D. Md. 2019) (collecting cases extending deadlines set by federal statute), *appeal dismissed sub nom. In re Cigar Ass'n of Am.*, No. 19-2130, 2020 WL 2116554 (4th Cir. May 4, 2020).

To effectuate this relief, this Court should further direct that the SBA Administrator not authorize, guaranty, or disburse funds appropriated for loans under the PPP without reserving sufficient funds to cover applicants wrongfully excluded under the challenged terms of the IFR and the application form, in an amount to be determined based on SBA data and submitted by the SBA to this Court for approval. *See, e.g.*, *In re Calais Regional Hospital*, No. 19-10486, 2020 WL 2201947, at *6 (Bankr. D. Me. May 1, 2020) (requiring the SBA to reserve funds for unlawfully excluded PPP applicants).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant the motion.

Dated:        June 16 , 2020          Respectfully submitted,

/s/ Kali N. Bracey

ReNika C. Moore (PHV pending)
Alejandro A. Ortiz (PHV pending)
Jennesa Calvo-Friedman (PHV
pending)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2654
RMoore@ACLU.org
OrtizA@ACLU.org
JCalvo-Friedman@ACLU.org

Joanna K. Wasik (Federal Bar No.
21063)
Hannah E. M. Lieberman (Federal Bar
No. 05456)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
700 14th St. NW, Ste 400
Washington, DC 20005
Tel.: (202) 319-1000
Fax: (202) 319-1010
Joanna_Wasik@washlaw.org
Hannah_Lieberman@washlaw.org

Claudia De Palma (PHV pending)
PUBLIC INTEREST LAW CENTER
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
Tel: (215) 627-7100
cdepalma@pubintlaw.org

Kali N. Bracey (Federal Bar No. 20752)
Elizabeth B. Deutsch (PHV pending)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel.: (202) 639-6000
Fax: (202) 639-6066
KBracey@Jenner.com
EDeutsch@Jenner.com

Jacob D. Alderdice (PHV pending)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel.: (212) 891-1625
Fax: (212) 891-1699
JAlderdice@Jenner.com

Zachary D. Tripp (PHV pending)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Tel.: (202) 682-7000
Zack.Tripp@Weil.com

Robert B. Niles-Weed (PHV pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel.:(212) 310-8000
Robert.Niles-Weed@Weil.com