# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Defy Ventures, Inc., *et al.*                               *
                                                       *
      v.                     *         Civil Action No. CCB-20-1838
                                                       *
U.S. Small Business Administration, *et al.*               *
\* \* \* \* \* \* \* \* \* \* \* \* \* \*   *
Carmen's Corner Store, *et al.*                            *
                                                       *
      v.                     *
                                                       *         Civil Action No. CCB-20-1736
U.S. Small Business Administration, *et al.*               *
\* \* \* \* \* \* \* \* \* \* \* \* \* \*   *

## MEMORANDUM

The COVID-19 pandemic has affected many small businesses, causing them to lose revenue or even shut down completely. In order to help these businesses and their employees, Congress created the Paycheck Protection Program ("PPP"), which provides for business loans that are fully forgivable if used for certain purposes, such as payroll expenses. The Small Business Administration ("SBA") has issued certain eligibility restrictions for participating in the PPP. At issue here is a rule restricting businesses from receiving PPP funds if they have a greater than 20% owner with a certain criminal history. The rule has gone through several iterations, which will be explained below. Most importantly, under the current iteration, the individual plaintiffs are eligible to apply for PPP funding.

The plaintiffs in *Defy Ventures, Inc. v. Small Business Administration* and *Carmen's Corner Store v. Small Business Administration* challenge this criminal history exclusion,[1] and both have filed motions for a preliminary injunction. Although the cases are not consolidated,

---

[1] Both sets of plaintiffs have filed their lawsuit against the SBA; Jovia Carranza, the Administrator of the SBA; and Steven Mnuchin, Secretary of the Department of Treasury. The *Defy* plaintiffs also filed their lawsuit against the U.S. Department of Treasury, and the *Carmen's Corner Store* plaintiffs also filed their lawsuit against the United States of America.

because they bring similar claims, the court will address the motions together.  Given that the application deadline for the PPP is June 30, 2020, the plaintiffs requested expedited briefing, which the court granted.  Briefing was completed on June 26, 2020.  No hearing is necessary.  For the reasons explained below, both motions will be granted in part and denied in part.

## FACTS AND PROCEDURAL HISTORY

I.       The CARES Act and Section 7(a) Loans

The SBA was created by the Small Business Act, 15 U.S.C. § 631 *et seq.*  Section 7(a) of the Act, which is codified at 15 U.S.C. § 636, authorizes the SBA to provide financial assistance to small business concerns.  Under Section 7(a), the SBA generally guarantees loans from private lenders rather than disbursing funds directly to borrowers.  (ECF 29-1, Decl. of John A. Miller, Deputy Associate Administrator for Capital Access, SBA ¶¶ 3-4).

In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), which was signed into law on March 27, 2020.  Title I of the CARES Act created the PPP.  The PPP, codified at 15 U.S.C. § 636(a)(36), is a "new loan program to be administered by the SBA under Section 7(a) of the Small Business Act."  *Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, --- F. Supp. 3d ----, No. 20-C-0601, 2020 WL 2088637, at *2 (E.D. Wis. May 1, 2020).  "The loans are made by the SBA's participating banks and guaranteed by the SBA itself."  *Id.*  Section 1106 of the CARES Act, however, provides that the PPP loans will be forgiven, and the SBA will pay the lender the amount forgiven, to the extent the borrower uses the funds for certain purposes, including for payroll expenses.  15 U.S.C. § 9005.  Congress initially appropriated $349 billion for the PPP program, and then an additional $310 billion in April 2020.  Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620 (2020).

2

The provision at issue in this case is titled "Increased eligibility for certain small businesses and organizations" and is codified at 15 U.S.C. § 636(a)(36)(D)(i).  It states that:

> During the covered period, in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of—
>
> (I)     500 employees; or
>
> (II)    if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates.

15 U.S.C. § 636(a)(36)(D)(i).

II.     Criminal History Exclusion

The CARES Act granted the SBA emergency rulemaking powers to administer the PPP. CARES Act, Section 1114 (codified at 15 U.S.C. § 9012).  On April 15, 2020, the SBA published an interim final rule (IFR) that provided additional restrictions on who could apply for PPP loans.  It stated that "[y]ou are ineligible for a PPP loan if . . . An owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony within the last five years."  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 FR 20811-01 ("April IFR").

This rule was revised on June 18, 2020, to shorten the time period for felony convictions. The revision changed "convicted of a felony within the last five years" to "convicted of a felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance within the last five years or any other felony within

the last year."  Business Loan Program Temporary Changes; Paycheck Protection Program—

Additional Revisions to First Interim Final Rule, 85 FR 36717-01 ("June IFR").  The other parts

of the rule (ineligibility if an owner is incarcerated, on probation, on parole or presently subject

to criminal charges) were not changed.

The rule was again revised on June 24, 2020, after the plaintiffs had filed their motions

and on the day the defendants filed their oppositions.  *See* Business Loan Program Temporary

Changes: Paycheck Protection Program, Additional Revisions to First Interim Final Rule,

https://www.sba.gov/document/policy-guidance-ppp-interim-final-rule-additional-eligibility-

revisions-first-interim-final-rule (posted June 24, 2020) ("June 24 IFR").  The June 24 revision

changed the rule in two ways.  First, instead of a business being excluded because a greater than

20% owner is facing any criminal charges, the business will only be excluded if the owner is

facing felony charges.  *Id.* at 5.  Second, as to the parole/probation exclusion, it is now "limited

to individuals whose probation or parole commenced . . . within the last five years for any felony

involving fraud, bribery, embezzlement, or a false statement in a loan application or an

application for federal financial assistance, and within the last one year for other felonies." *Id.* at

6.

The SBA similarly restricts eligibility for those that have certain criminal histories as to

its pre-existing Section 7(a) loan program, which the SBA has administered for many years.  *See*

13 C.F.R. § 120.110(n).  That regulation provides that "[b]usinesses with an Associate[2] who is

incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral

turpitude" are ineligible for SBA business loans.  *Id.*  Another regulation also states that to

ensure creditworthiness, the SBA will consider the "[c]haracter [and] reputation" of the

---

[2] An "Associate" includes an "officer, director, owner of more than 20 percent of the equity, or key employee of the small business," among other individuals and entities.  13 C.F.R. § 120.10(2).

applicant. 13 C.F.R. § 120.150(a).  Therefore, businesses with associates "[c]urrently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction" are also ineligible for financial assistance.  SBA, SOP 50 10 5(K), Lender and Development Company Loan Programs, at 110 (Jan. 1, 2019).  For associates with other types of criminal history, including those who have been convicted of a felony, the SBA requires an individualized character determination, which may involve an FBI fingerprint background check.  *Id.* at 110–13; ECF 29-1, John Miller Decl., ¶¶ 9–12.

     III.    The Plaintiffs

     A.  *Defy Ventures, Inc. v. Small Business Administration*, No. 20-1838

The plaintiffs are Defy Ventures, Inc.; Sekwan Merritt; Prop Prep Properties, LLC d/b/a/ Lightning Electric; John D. Garland; and Sign Me Up Bethpage, Inc. d/b/a Fastsigns 2323. Merritt is a resident of Maryland and the sole owner of Prop Prep Properties LLC.  (Compl. ¶¶ 17, 18).  Under the prior iteration of the rule, and because Merritt is currently on parole, he could not obtain PPP funding for his business, which he intended to use to pay his employees and pay for essential business costs, such as general liability insurance.  (*Id.* ¶¶ 71, 82–85).  Garland is a resident of New York and the majority owner of Sign Me Up Bethpage, Inc.  (*Id.* ¶ 19).  Garland has been charged with petit larceny and violation of an order of protection in regards to a dispute with his wife, to which he has pleaded not guilty.  (*Id.* ¶¶ 96, 97).  Because of this, and under the prior iteration of the rule, Garland and his business partners could not get PPP funding that they intended to use for payroll costs, rent, utilities, and other essential expenses.  (*Id.* ¶¶ 101, 102). Under the June 24 revised version of the rule, Prop Prep Properties and Sign Me Up Bethpage are both eligible to apply for PPP funding.  Still, they have continued to experience difficulties in obtaining a loan.  For example, Sekwan Merritt attempted to apply at his local Wells Fargo branch and was told to apply online, but when he tried, the online portal was no longer accepting

applications. He also attempted to obtain a point of contact for the SBA (which has agreed to

help Merritt obtain a loan), but when he finally was able to reach a Wells Fargo representative,

he was informed that the bank is no longer accepting applications, and he would need to go to

SBA's website to find a lender still accepting applications. (ECF 34-10, Merritt Suppl. Decl. ¶¶

9–23). It is not clear how many lenders are still accepting applications. John Garland attempted

to apply online at both JP Morgan Chase and Square Capital, but no applications were available

on the sites. He then tried to apply at www.lendio.com, but that site still had the previous forms,

advising that if the applicant had any pending charges the application would not be approved.

(ECF 34-12, Garland Suppl. Decl. ¶¶ 6–9).

Defy Ventures, Inc. is a non profit organization whose "mission is to use

entrepreneurship and employment as tools for currently and formerly incarcerated individuals to

address the social problems of mass incarceration and recidivism. Defy has chapters

in New York, Northern California, Southern California, Connecticut, and Illinois, and

licensed affiliates in Colorado and Washington." (Compl. ¶ 21). Defy has helped formerly

incarcerated individuals launch over 140 small businesses, and also runs the "Defy

Entrepreneurship Network," which is a long-term supportive network for those who have

successfully launched businesses. (*Id.* ¶¶ 111, 112). Because small-business owners (graduates

of Defy programs and non-graduates) have turned to Defy for help with regards to the criminal

history rule, Defy has had to divert its resources from previously planned programming and

training activities in order to understand the rule, provide answers to the small business owners,

and help them find alternative funding. (*Id.* ¶¶ 116, 119, 120–123).

They allege that: 1) in violation of the Administrative Procedure Act ("APA"), the

criminal record exclusions exceed statutory authority and are not in accordance with law; 2) in

violation of the APA, the criminal record exclusions are arbitrary and capricious and an abuse of

discretion; and 3) in violation of the APA, the criminal record exclusions were adopted without observance of procedure required by law.  It appears, though, that the motion for preliminary injunction is based only on counts 1 and 2.  In their motion for preliminary injunction, they request that the court "[p]reliminarily enjoin the challenged criminal-record exclusion provisions of the interim final rule," "enjoin Defendants from enforcing such provisions, and extend the application deadline 21 days, to July 21, 2020, for applicants wrongfully excluded," and "[d]irect that Defendants not authorize, guaranty, or disburse funds appropriated for loans under the Paycheck Protection Program without reserving sufficient funds to cover applicants wrongfully excluded under the challenged terms of the IFR and the application form, in an amount to be determined based on SBA data and submitted by the SBA to this Court for approval."  (ECF 2, Mot. for Preliminary Injunction at 1–2).[3]

B. *Carmen's Corner Store v Small Business Administration*, No. 20-1736

The plaintiffs are Carmen's Corner Store, Retail4Real, and Altimont Mark Wilks. Wilks is a resident of Maryland and owns and operates Carmen's Corner Store and Retail4Real.  (ECF 1, Compl. ¶ 8).  He is currently on state parole stemming from offenses in 2004.[4]  (*Id.*).  Wilks applied for a $10,000 PPP loan for Retail4Real, (*id.* ¶ 81), but the loan was denied and/or not processed due to Wilks's criminal record, (*id.* ¶¶ 85–90).  Because of this, Wilks did not apply for a PPP loan on behalf of Carmen's Corner Store, as it would also be denied.  (*Id.* ¶¶ 93, 96).  Wilks's businesses, however, are now eligible for PPP funding under the June 24 revised version of the rule.

---

[3] The *Defy Ventures* plaintiffs note in their reply that "[g]iven that over $125 billion in PPP funds remain available, there is a less urgent need for the Court to enjoin the agency to set aside funds for these wrongfully excluded applicants[.]"  (ECF 34, Reply at 12 n.4).
[4] According to the complaint filed June 10, 2020, Wilks also was on federal supervised release, but that was set to expire on June 14, 2020.  (Compl. ¶ 8).

The plaintiffs allege that 1) the criminal history rule contravenes the CARES Act; 2) the criminal history rule is arbitrary and capricious; and 3) the defendants failed to carry out a ministerial duty.  In the motion for a preliminary injunction, the plaintiffs request that the court enjoin the defendants from denying loans to Wilks's businesses, and "require the Defendants to set aside the $31,500 in PPP loans for which the Plaintiffs' businesses would apply until this Court can resolve this case on the merits."  (ECF 7, Mot. for Preliminary Injunction at 32).  The court notes that, in the plaintiffs' reply, they now ask the court to enjoin the defendants' enforcement of the criminal history exclusion.  (ECF 15, Reply at 24). [5]

## STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).   A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 22.

## DISCUSSION

I.    Mootness

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citation omitted).  "There is, however, a well-recognized exception to the mootness doctrine holding that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"  *Id.* (citations omitted).  "To

---

[5] The court spoke with counsel on June 29, 2020.  Counsel for the plaintiffs informed the court that the individual plaintiffs have not yet been able to receive loan approval, despite attempting to find lenders still accepting applications and working with potential lenders to provide requested documentation.

that end, 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 364 (citation omitted).

The court declines to find the case moot as to the individual plaintiffs and their businesses, even though they are now eligible to apply for PPP loans. As discussed above, the individual plaintiffs still face difficulties in applying at the last minute either because banks are no longer accepting applications or because banks are still using old forms with the prior criminal history exclusion. Therefore, the plaintiffs continue to face ongoing harm because of the allegedly unlawful prior iterations of the rule. Further, one part of their requested relief, that the deadline be extended to July 21 so they have adequate time to apply, has not yet been met.[7]

## II.   Organizational Standing as to Defy Ventures

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000) (citation omitted). The same inquiry applies to organizations.[8] *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012). "An organization may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission." *Id.*. For example, this may occur

---

[7] The defendants discuss the alleged mootness in regards to standing, but these are two different inquiries. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000) (distinguishing between the "initial standing to bring suit" and "postcommencement mootness"). There does not appear to be any contention that the individual plaintiffs did not have initial standing to bring this suit.

[8] "An association [also] has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc.,* 528 U.S. at 181. Because Defy Ventures does not discuss its members or whether they have standing, it does not appear to assert standing on this basis.

when the challenged action has "perceptibly impaired" the organization's ability to provide services, "with the consequent drain on the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 183 (4th Cir. 2013) (characterizing *Havens Realty* as "finding standing when 'broadly alleged' impairment of an organization's ability to advance its purposes combined with an alleged 'consequent drain on the organization's resources'"). *Havens* is in contrast to *Lane v. Holder*, where the Fourth Circuit found that an organization dedicated to promoting the right to keep and bear arms did not have standing to challenge laws restricting the interstate transfer of handguns, because "[t]o determine that an organization that decides to spend its money on educating members, responding to member inquiries, or undertaking litigation in response to legislation suffers a cognizable injury would be to imply standing for organizations with merely abstract concerns with a subject that could be affected by an adjudication." *Lane*, 703 F.3d at 675 (citation, quotation marks, and alteration omitted).

The situation here is more akin to that in *Havens Realty* than in *Lane*.  Defy Ventures provides supportive services to formerly incarcerated individuals that have started small businesses.  The challenged rule "perceptibly impair[s]" that goal by denying those individuals PPP funding.  This has caused a "consequent drain on the organization's resources" in helping those individuals understand the rule and obtain alternative funding.  This is not a case where the organization's only harm is money spent "on educating members, responding to member inquiries, or undertaking litigation."  Rather, Defy Ventures provides services to help formerly incarcerated individuals run their small businesses during the COVID-19 crisis and has had to expend more resources to provide those services because of the challenged rule.  Further, since the June 24 rule was issued, Defy Ventures has advised newly eligible members and helped them

in dealing with lenders who still use the old forms or are no longer accepting applications.  (ECF 34-8, Andrew Glazier, Suppl. Decl. ¶ 10).

The defendants also argue that Defy Ventures has not shown redressability because its requested relief is not available, namely the request that this court enjoin the defendants "by extending the June 30, 2020, termination date that Congress specified for the PPP, and by requiring the Government to ensure the availability of funds for PPP loans beyond that Congressionally-prescribed deadline."  (ECF 29, Opp'n at 22).  But regardless of whether the requested relief is available (which will be discussed *infra*), this is only part of the relief that Defy Ventures seeks (and it appears Defy Ventures no longer seeks to ensure the availability of funds); Defy Ventures also requests that the court enjoin enforcement of the challenged rule.

III.    Injunctive Relief Against the Small Business Administration

The Small Business Act provides that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property." 15 U.S.C. § 634(b)(1).  *Camelot Banquet Rooms, Inc.* persuasively explains that this provision was meant to protect the SBA from state law garnishment or other like actions, but not "to render the agency immune from injunctive relief in situations where the agency has exceeded its statutory authority and where an injunction would not interfere with the agency's internal operations." 2020 WL 2088637, at *3–4.  Further, the defendants' reading means the SBA "could adopt unconstitutional policies and continue to follow them even after a court declared them unconstitutional" – an absurd result.  *See id.* at *4; *cf. Tradeways, Ltd. v. United States Dep't of Treasury*, No. CV ELH-20-1324, 2020 WL 3447767, at *9–11 (D. Md. June 24, 2020) (noting that the use of "attachment" and "garnishment" indicate that § 634(b)(1) was meant to prohibit courts from interfering with "SBA's commercial operations or property" but declining to conclusively determine its scope).

11

The cases that the defendants cite do not compel a different conclusion.[9]  The defendants cite to *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) which found that "section 634(b)(1) precludes the imposition of an equitable lien on any funds belonging to the SBA[.]"  An equitable lien is far different than the injunction sought here, and the Fourth Circuit's decision prohibiting such a lien tracks the purposes of the section as described by *Camelot Banquet Rooms.*  Similarly, *Duncan v. Furrow Auction Co.,* 564 F.2d 1107, 1108–09 (4th Cir. 1977) and *Vincent v. Small Bus. Admin.*, 402 F.2d 769, 770 (4th Cir. 1968) involved requests to enjoin the SBA or a trustee from foreclosing a deed of trust securing notes held by the SBA.  Neither involved an injunction related to the SBA in its rulemaking capacity.  The Fifth Circuit did recently hold that an injunction against the SBA related to the exclusion of bankruptcy debtors from receiving PPP funds was improper, but that was based on Fifth Circuit precedent holding that all injunctive relief against the SBA was absolutely prohibited.  *In re Hidalgo Cty. Emergency Serv. Found.*, --- F.3d ----, No. 20-40368, 2020 WL 3411190, at *1–2 (5th Cir. June 22, 2020).  The plaintiffs have pointed to no such precedent in this circuit requiring such a result.

Therefore, the court finds that injunctive relief in this case is available against the SBA.

IV.     Likelihood of Success on the Merits

a.     Not in Accordance with the Law

The APA provides that courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A).  "When a challenger asserts that an agency action conflicts with the language of a statute, [the court should] generally apply the two-step analytical framework set forth in *Chevron, U.S.A., Inc. v Nat. Res. Def. Council, Inc.*, [467 U.S. 837

---

[9] The defendants also argue that the proper relief would be a remand to the agency, rather than an injunction, citing to *I.N.S. v. Orlando Ventura*, 537 U.S. 12 (2002) and *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985).  These cases concern agency adjudications, however, not formal rulemaking.  In any event, because the PPP expires on June 30, 2020, there is not time for a remand to the agency.

(1984)].”  *Sierra Club v. United States Army Corps of Engineers*, 909 F.3d 635, 643 (4th Cir.

2018).  First, the court determines “whether Congress has directly spoken to the precise question

at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as

the agency, must give effect to the unambiguously expressed intent of Congress.”  *Chevron*, 467

U.S. at 842–43.  In the first step, the court should “use the ‘traditional tools of statutory

construction’ to ascertain congressional intent,” including  looking to the text of the statute and

the overall statutory scheme.  *Chamber of Commerce of U.S. v. N.L.R.B.*, 721 F.3d 152, 160 (4th

Cir. 2013) (citation omitted).  If the statute is ambiguous, the court proceeds to the second step,

in which it determines whether the agency’s construction is permissible.  *Chevron*, 467 U.S. at

843.

Step 1

The plaintiffs argue that the text of the CARES Act, which states that “*any* business

concern . . . *shall* be eligible to receive a covered loan” if the business concern meets the size

requirement, 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added), indicates Congressional intent that

all businesses be eligible to apply for PPP funding.  Relying on other cases that have similarly

held, particularly *DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.*, --- F.

Supp. 3d ----, No. 20-CV-10899, 2020 WL 2315880 (E.D. Mich. May 11, 2020)[10], the plaintiffs

argue that this provision is a clear mandate prohibiting the SBA from imposing any additional

restrictions.

The court disagrees, for many of the reasons explained in *Diocese of Rochester v. U.S.*

*Small Bus. Admin.,* --- F. Supp. 3d ----, No. 6:20-CV-06243 EAW, 2020 WL 3071603

---

[10] In a divided decision, the Sixth Circuit denied the request to stay the injunction imposed by *DV Diamond Club*,
stating that “by specifying ‘any business concern,’ Congress made clear that the SBA’s longstanding ineligibility
rules are inapplicable given the current circumstances.”  *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960
F.3d 743, 747 (6th Cir. 2020).

(W.D.N.Y. June 10, 2020) and *Tradeways, Ltd.*, 2020 WL 3447767.[11]  First, while the word "any" generally carries an expansive meaning, *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018), "'any' can and does mean different things depending upon the setting," *Nixon v. Missouri Mun. League*, 541 U.S. 125, 132 (2004), and it is an error to place dispositive weight on "any" "without considering the rest of the statute."  *Small v. United States*, 544 U.S. 385, 388 (2005) (quoting *United States v. Alvarez–Sanchez*, 511 U.S. 350, 357 (1994).  The CARES Act states that "[d]uring the covered period, in addition to small business concerns, any business concern" is eligible if it meets certain size restrictions.[12]  The preceding reference to "small business concerns" and the subsequent reference to size restrictions indicate that "any" is meant to indicate that SBA financial assistance is not limited in the PPP just to small business concerns.  But "the Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could be no other eligibility criteria."  *Diocese of Rochester*, 2020 WL 3071603, at *6.

Additionally, while the court agrees with the plaintiffs that the PPP differs significantly from the SBA's ordinary loan program, Congress still placed the PPP within Section 7(a).  "Therefore, had Congress intended the CARES Act to eliminate all eligibility criteria governing SBA loans administered under § 7(a) of the Small Business Act, one would expect Congress to have spoken clearly."  *Tradeways, Ltd.*, 2020 WL 3447767, at *13.

---

[11] Those cases, both involving the exclusion of bankruptcy debtors from applying for PPP funding, analyzed the same argument that the plaintiffs make here.

[12] Generally, the SBA may only make Section 7(a) loans to "small business concerns."  15 U.S.C. § 636(a).  A "small business concern" is one "which is independently owned and operated and which is not dominant in its field of operation," but the SBA can, and has, limited "small business concerns" to entities that meet certain size standards. 15 U.S.C. § 632(a).  Federal regulations provide that "SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS)."  13 C.F.R. § 121.101.

The statutory context also supports that Congress presumed other restrictions would apply.  Other parts of the CARES Act expressly lift normally applicable restrictions on loan eligibility, which would have been unnecessary if Congress had intended that no other restriction except the size restrictions apply.  *See Diocese of Rochester,* 2020 WL 3071603, at *7 ("[t]hese waivers of otherwise applicable eligibility requirements would be superfluous if, in fact, § 1102(a)(36)(D)(i) unambiguously eliminated any requirement beyond size.").  Particularly, the provision permitting sole proprietors and independent contractors to receive PPP loans (15 U.S.C. § 636(a)(36)(ii)); the provision waiving the no "credit elsewhere" requirement (*id.* § 636(a)(36)(I)); and the provision waiving collateral and personal guarantee requirements (*id.* § 636(a)(36)(J)) would be superfluous if Congress had intended that the only eligibility requirements for businesses were the size restrictions in 15 U.S.C. § 636(a)(36)(D)(i).

Therefore, the court finds that at step 1 of *Chevron*, Congress has not clearly spoken as to whether the SBA may impose additional restrictions on eligibility, including the criminal history exclusion.

<u>Step 2</u>

As discussed above, at Step 2, the court should defer to the agency's construction as long as it is reasonable.[13]  The court will defer to the agency "so long as the interpretation is not 'arbitrary, capricious, or manifestly contrary to the statute'" and "[a] construction meets this standard if it 'represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute.'"  *Philip Morris USA, Inc. v. Vilsack*, 736 F.3d 284, 290 (4th Cir. 2013) (quoting *Chevron*, 467 U.S. at 844–45).

---

[13] The *Carmen's Corner Store* plaintiffs appear to argue in their reply that *Chevron* deference is unconstitutional. This court, however, is bound by Supreme Court precedent.

The *Carmen's Corner Store* plaintiffs first argue that Congress has not delegated authority to the SBA to issue regulations to implement the PPP. This is incorrect. Section 1114 of the CARES Act provides emergency rulemaking authority to the SBA and states that "the Administrator shall issue regulations to carry out this title and the amendments made by this title." 15 U.S.C. § 9012. Section 1102(a) of the CARES Act further provides that "[e]xcept as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under [Section 7(a)]." 15 U.S.C. § 636(a)(36)(B). Therefore, Congress has expressly delegated authority to the SBA to implement the PPP.

The court finds that the agency's June 24 IFR[14] is based on a permissible construction of the statute. As discussed above, it appears that Congress presumed that other eligibility restrictions would apply, and the SBA normally restricts Section 7(a) eligibility based on criminal history. The *Carmen's Corner Store* plaintiffs argue that the rule is unreasonable because the SBA is more akin to a grant program, not a loan program, so ability to repay is not important. While the court agrees that the PPP functions differently than the SBA's other loan programs, it is not unreasonable to consider ability to repay, because if the loans are not used for specified purposes, than they are not forgivable. The *Carmen's Corner Store* plaintiffs also argue that the criminal history exclusion is not reasonable because it excludes more businesses than the SBA's normal Section 7(a) restrictions. This appears to refer to the fact that for associates who have prior convictions, the criminal history exclusion institutes a bright-line rule, instead of the individualized character determinations that SBA guidance normally calls for. But it was reasonable for the SBA to choose "to adopt a bright-line rule in order to expedite the

---

[14] Because the court finds the prior iterations of the rule were arbitrary and capricious, *see infra*, the court does not address whether the prior iterations of the rule are based on reasonable constructions of the statute.

underwriting process and facilitate the hasty distribution of PPP funds, instead of issuing a flexible standard that would require lenders to scrutinize each PPP application on a case-by-case basis." *Tradeways, Ltd.,* 2020 WL 3447767, at *14 (D. Md. June 24, 2020).

Therefore, the plaintiffs are not likely to succeed on the merits as to their claim that the criminal history exclusion is contrary to the CARES Act.

b.   Arbitrary and Capricious

As discussed above, under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia*, "arbitrary, [and] capricious[.]"  5 U.S.C. § 706(2)(A).  "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one."  *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,* 556 F.3d 177, 192 (4th Cir. 2009).  "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "To comply with § 706(2)(A), an agency 'must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Casa De Maryland v. U.S. Dep't of Homeland Security*, 924 F.3d 684, 703 (4th Cir. 2019) (quoting *State Farm*, 463 U.S. at 43). "One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).

April IFR and First June IFR[15]

---

[15] The court addresses the arbitrary and capricious claim as to the April and June IFR because, although the rules are no longer operative, they are still causing ongoing harm to the plaintiffs for the reasons described *supra*.

The plaintiffs are likely to show that the SBA acted arbitrarily and capriciously in promulgating the April IFR and first June IFR because those rules contain no explanation for the criminal history exclusion.  In the June IFR, which eased the exclusion, the Administrator explained "[a]fter further consideration, the Administrator, in consultation with the Secretary of the Treasury (the Secretary), has determined that a shorter timeframe for felonies that do not involve fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance is more consistent with Congressional intent to provide relief to small businesses and also promotes the important policies underlying the First Step Act of 2018 (Pub. L. 115-391)."  June IFR, 85 FR 36717-01.   But the June IFR still did not explain the initial purpose of the criminal history exclusion, rather offering only a reason to ease it.

The defendants argues that the court can rely on the declaration of John A. Miller, Deputy Associate Administrator for Capital Access, Small Business Administration, (attached to the defendants' opposition at ECF 29-1), because "[i]n circumstances such as this, where the agency's explanation for its action is not reflected in the record of its action, the agency may instead submit a declaration by a responsible official stating the grounds and rationale on which the agency relied."  (Opp'n at 35).  The cases the defendants cite, however, do not support the proposition that the agency need not give any contemporaneous explanation when promulgating a rule.  Although *Roe v. Dep't of Def.* provides that courts may consider affidavits when there was a failure to explain agency action, "such post-hoc materials must only provide 'background information or evidence of whether all relevant factors were examined by an agency,' or be 'merely explanatory of the original record and ... contain no new rationalizations.'" 947 F.3d 207, 221 (4th Cir. 2020), as amended (Jan. 14, 2020) (citation omitted); *see also Camp v. Pitts*, 411 U.S. 138, 143 (1973) (identifying contemporaneous explanation, although curt, of agency decision); *Envtl. Def. Fund, Inc. v. Castle*, 657 F.2d 275, 285 (D.C. Cir. 1981) ("The new

materials should be merely explanatory of the original record and should contain no new rationalizations.").  Similarly, while *Virginia Agr. Growers Ass'n, Inc. v. Donovan*, 774 F.2d 89, 92 (4th Cir. 1985) suggests that the court may obtain "supplementation of the administrative record," nothing in the opinion allows an agency to promulgate a rule without any explanation whatsoever, as was the case here.  As the Supreme Court has recently stated, "[a]n agency must defend its actions based on the reasons it gave when it acted."  *Dep't of Homeland Sec. Regents of the Univ. of California*, No. 18-587, 2020 WL 3271746, at *11 (U.S. June 18, 2020).  Further, although the CARES Act granted SBA emergency rulemaking powers without the need to follow the applicable "notice requirements," 15 U.S.C. § 9012, it does not appear that this relieves the defendants of the requirement to provide a reasoned explanation, nor do the defendants provide any support for that proposition.[16]

### June 24 IFR

The plaintiffs have not demonstrated that they are likely to succeed on the merits of their arbitrary and capricious claims as to the June 24 IFR, which provides a reasoned explanation for a more limited criminal history exclusion.  The SBA explained that the criminal history exclusions were based on ability to repay (which the business may have to do if PPP funds are not used for certain purposes) and potential for misuse of funds.  Having an owner incarcerated facing felony charges, or having a higher likelihood of reincarceration (e.g. if recently placed on probation or parole), the rule explains, could place the creditworthiness of the business in question.  June 24 IFR at 7–8.  Additionally, criminal history, especially with regard to felonies involving fraud, bribery, embezzlement, or a false statement in a loan application or an

---

[16] Additionally, the agency affidavit considered in Olivares v. Transportation Sec. Admin., 819 F.3d 454, 464 (D.C. Cir. 2016), which the defendants cite to, illuminated the reasons for agency action contained in internal and contemporaneous agency materials that were also provided to the court.   No such internal materials were provided here.

application for federal financial assistance, might indicate a greater potential for the misuse of PPP funds. *Id.* at 8. This is an adequate and reasonable explanation for the purposes of arbitrary and capricious review.

The plaintiffs also argue that the rule is contrary to the purposes of the PPP. The court agrees with the plaintiffs that the primary purpose of the PPP appears to be to ensure that workers remain paid, and that because the loans actually function as grants to the extent they are used for specified purposes, the ability to repay is less important. But, given that the PPP requires businesses to repay the loans if they are not used for certain purposes, the court cannot find that it was arbitrary and capricious for the SBA to consider ability to repay when issuing its rule. The *Carmen's Corner Store* plaintiffs cite to *In re Gateway Radiology Consultants, P.A.*, which stated that "[b]ecause PPP Loans are designed to be forgiven, Congress did not intend for the SBA Administrator to focus on collectability." No. 8:19-BK-04971-MGW, 2020 WL 3048197, at *14 (Bankr. M.D. Fla. June 8, 2020). But although PPP loans may be "designed to be forgiven," the structure of the PPP program shows that they will not always be forgiven. Additionally, the June 24 revised rule is much less restrictive than previous iterations, and the SBA has balanced its original criminal history exclusion (drawn from the normally applicable Section 7(a) eligibility rules)[17] with the goals of the PPP Program to help businesses and workers in need.

The SBA also explained that the criminal history exclusion is meant to reduce the potential misuse of funds. While there appears to be no specific evidence cited by the SBA that individuals convicted of crimes or facing felony charges, especially non-financial crimes or charges, are more likely to misuse SBA funds, the court must give some deference to the SBA's

---

[17] *See* 13 C.F.R. § 120.110(n) and SBA, SOP 50 10 5(K), Lender and Development Company Loan Programs, at 110 (Jan. 1, 2019), discussed *supra*.

determinations, based on its lengthy history of administering the program.  *See F.C.C. v. Nat'l*

*Citizens Comm. for Broad.*, 436 U.S. 775, 814 (1978)).  And here, the plaintiffs have supplied no

contrary evidence that the agency disregarded.

The *Carmen's Corner Store* plaintiffs make other arguments, but they do not suffice to

show that the rule is arbitrary and capricious.  First, as to the multiple revisions, the rule was

promulgated quickly pursuant to emergency rulemaking powers granted by the CARES Act, it

appears the changes were based on comments received and, in any event, the most recent

revisions are aimed at narrowing the criminal history exclusion and have helped the individual

plaintiffs in these cases.  And while the SBA normally provides for individualized

determinations instead of categorical denials when an associate of a business has prior criminal

convictions, SOP 50 10 5(K) at 109–11, the SBA could reasonably find that such individualized

determinations would take too long and that a bright-line rule was better.  *See Tradeways*, 2020

WL 3447767, at *14.  The plaintiffs also argue that it was arbitrary to make faith-based

organizations eligible (as they are generally ineligible for SBA loans), without extending

eligibility to all individuals with criminal histories.  But faith-based organizations were deemed

eligible in order to comply with the Religious Freedom Restoration Act, which does not apply to

the plaintiffs.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program,

85 FR 20817-01, 20819.  The plaintiffs also rely on letters from legislators after the CARES Act

was passed regarding the criminal history exclusion, but courts should "normally give[] little

weight to statements, such as those of the individual legislators, made *after* the bill in question

has become law."  *Barber v. Thomas*, 560 U.S. 474, 486 (2010) (emphasis in original).

    c.   Unlawfully Withheld Agency Action/Failure to Carry Out Ministerial Duty

The APA provides that a court may "compel agency action unlawfully withheld or

unreasonably delayed." 5 U.S.C. § 706(1).   Section 706(1) "empowers a court only to compel

an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter,

without directing *how* it shall act.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)

(citation omitted). It requires a "*discrete* agency action that [the agency] is *required to take*." *Id.*

(emphasis in original).

The *Carmen's Corner Store* plaintiffs' argument for this claim[18] is that under the CARES

Act the SBA must administer PPP funds only considering the criteria (the size restrictions) set

out in the Act.  For the reasons stated above, the court disagrees.  Therefore, the plaintiffs have

not shown a likelihood of success on this claim.

V.     Requested Injunction

As discussed above, the plaintiffs have shown a likelihood of success on the merits as to

their arbitrary and capricious claims related to the first two iterations of the rule.  The plaintiffs

request that the deadline for PPP applications be extended from June 30, 2020, until July 21,

2020, to account for the fact that owners of many now-eligible businesses do not know they are

eligible; the SBA has not publicized the new June 24 rule;[19] many lenders are no longer

accepting applications in anticipation of the June 30 deadline; and many lenders are still using

old forms.  The court notes that the late revision of the rule on June 24, 2020, has put the

plaintiffs in a difficult situation and based on the record before the court, is likely to cause the

---

[18] The *Defy Ventures* plaintiffs do not bring a claim under § 706(1).

[19] The defendants dispute this, stating that they have sent a notification of the updated rule to "18 national trade associations for all types of lenders, large individual lenders, and most new non-bank lenders; SBA field staff and senior headquarters staff; external affairs officials at the Federal Reserve, FDIC, OCC, NCUA, Treasury, the SEC, and USDA, who actively engage with multiple lender communities; the Minority Business Development Agency at the Department of Commerce; State bank supervisors; and major business groups, religious organizations and non-profit council groups."  (ECF 17, William J. Briggs, Deputy Associate Administrator for the Office of Capital Access, SBA ¶ 4).

individual plaintiffs irreparable harm since they may not be able to obtain PPP funding.

Extending the deadline would also serve the public interest.[20]

The parties disagree as to whether the court has the authority to extend the deadline to

apply for PPP funds, but this court agrees with the plaintiffs that it does have such authority.  The

plaintiffs cite to a line of cases in which courts have held that they have the power "to order that

funds be held available beyond their statutory lapse date" (the deadline by which the agency

must obligate the appropriated funds, before they revert back to the Treasury) "if equity so

requires."  *State of Conn. v. Schweiker*, 684 F.2d 979, 997 (D.C. Cir. 1982) (citation omitted).

Ordinarily, for the court to have this power, the plaintiff must have filed suit prior to the statutory

lapse date; "[d]ecisions that a court may act to prevent the expiration of budget authority which

has not terminated at the time suit is filed are completely consistent with the accepted principle

that the equity powers of the courts allow them to take action to preserve the status quo of a

dispute and to protect their ability to decide a case properly before them."  *Nat'l Ass'n of Reg'l*

*Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977); *see also Andrulis Research Corp. v. U.S.*

*Small Bus. Admin.*, No. CIV. A. 90-2569(CRR), 1990 WL 169318, at *2 (D.D.C. Oct. 19, 1990)

(extending the plaintiff's eligibility under an SBA program, and noting that various appellate

courts have affirmed a "district court's power to extend statutory deadlines to remedy improper

agency delay," and citing cases).[21]   And in fashioning appropriate relief, "[i]n some

---

[20] As the Sixth Circuit has stated, "[t]he stated purpose of the PPP is to protect the employment and livelihood of employees. Thus, the public interest is served in guaranteeing that any business, including plaintiffs', receive loans to protect and support their employees during the pandemic which, we can all agree, constitutes extraordinary circumstances."  *DV Diamond Club of Flint, LLC*, 2020 WL 2988528, at *3.  Here, the harm to the SBA is negligible because it has promulgated the June 24 rule, which states that these previously excluded businesses should be able to get funding.  And the public has an interest in helping those businesses obtain funding when the only reason they have had to wait until the last minute is because the SBA has only now changed the rule.

[21] Additionally, in imposing a deadline for new tobacco products to submit marketing order applications, a court in this district relied on its power to fashion equitable remedies especially in extraordinary circumstances.  *Am. Acad. of Pediatrics v. Food & Drug Admin.*, 399 F. Supp. 3d 479, 486–87 (D. Md. 2019), appeal dismissed sub nom. *In re Cigar Ass'n of Am.*, No. 19-2130, 2020 WL 2116554 (4th Cir. May 4, 2020).  Extraordinary circumstances (the COVID-19 pandemic) also exist here.

circumstances, the scope of the remedy can extend beyond the scope of the original right." *Burr by Burr v. Ambach*, 863 F.2d 1071, 1078 (2d Cir. 1988), cert. granted, judgment vacated sub nom. *Sobol v. Burr*, 492 U.S. 902, 109 S. Ct. 3209, 106 L. Ed. 2d 560 (1989), and on reconsideration sub nom. *Burr by Burr v. Sobol*, 888 F.2d 258 (2d Cir. 1989) (finding remedy of compensatory education past the statutory maximum age of 21 appropriate where, if the court were "not [to] allow an award of compensatory education, then Clifford's right to an education between the ages of three and twenty-one is illusory. Clifford cannot go back to his previous birthdays to recover and obtain the free education to which he was entitled when he was younger.").

Here, the individual plaintiffs filed suit before the deadline, are now eligible to apply for PPP funds, and are at risk of losing a benefit for which they are eligible because of arbitrary and capricious agency action.  The court is not intruding on Congress's appropriations power because Congress has already appropriated PPP funding for businesses like the plaintiff businesses, and there are PPP funds remaining so no additional appropriation is needed.  *Cf. Speers v. United States*, 38 Fed. Cl. 197, 202 (1997) ("Thus, in the absence of clear Congressional authority, the other branches of government cannot effect payment of Treasury funds.").  To give the plaintiffs the chance to apply would further, rather than contravene, Congress's will that eligible businesses be able to apply for PPP funds.

This is not like *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990), which the defendants cite to.  The plaintiff in that case received disability annuity under a federal statute. *Id.* at 416.  After receiving erroneous advice from a government employee relations specialist, the plaintiff took on extra work, which caused him to exceed the statutory earning limit and lose his disability benefits for a six-month period.  *Id.* at 418.  He appealed, arguing that the government should be equitably estopped from denying him benefits.  *Id.*  The Supreme Court

held that the award the plaintiff sought – the disability benefits for the six-month period – was in contravention of the statute authorizing the benefits and that to award it would be in violation of the Appropriations Clause.[22]  *Id.* at 424 ("It follows that Congress has appropriated no money for the payment of the benefits respondent seeks, and the Constitution prohibits that any money 'be drawn from the Treasury' to pay them.").  But the plaintiffs here, unlike in *Richmond*, meet the substantive criteria for PPP funds, and were only unable to apply earlier because of an SBA rule that the court has found to be arbitrary and capricious.  Nor are the plaintiffs attempting to obtain money damages that Congress has not authorized, unlike in *United States v. Testan*, which the defendants also cite to.  424 U.S. 392, 400 (1976) (regarding a claim for backpay for improper government classification, and stating "[i]t follows that the asserted entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (citation omitted)).

Accordingly the court will extend the deadline to apply for the individual plaintiffs and their businesses until July 21, 2020. [23]

VI.   Scope of Injunction

Defy Ventures requests that the court extend the PPP application deadline for all  newly eligible individuals that were previously wrongfully excluded under the old iterations of the criminal history exclusion. "It is well established that 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Kentuckians for Commonwealth Inc. v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir. 2003) (quoting

---

[22] The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. art. I, § 9, cl. 7

[23] The court understand from the June 29, 2020, call with counsel that some of the individual plaintiffs are still working to provide the appropriate paperwork to show that they have covered expenses for the purposes of the PPP. This opinion does not affect that requirement except to give the individual plaintiffs a fair and reasonable time to work with a lender to supply the necessary paperwork.

*Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  Defy Ventures must make a "clear showing that [it]they will likely suffer irreparable harm in the absence of an injunction." *Action NC v. Strach*, 216 F. Supp. 3d 597, 642 (M.D.N.C. 2016).   The harm must be "certain and great," "actual and not theoretical," and "so 'imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm.'  Second, the harm 'must be beyond remediation.'" *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citation omitted).

Past harm, without more, cannot form the basis for injunctive relief.  *Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 609 (D. Md. 2016), aff'd, 685 F. App'x 261 (4th Cir. 2017).  Here, any ongoing harm that Defy Ventures will continue to face, especially after June 30, is not clear.  Much of the harm that Defy Ventures has pointed to is past harm.   For example, Defy Ventures states that it has had to devote resources to inform newly eligible Defy graduates that they can now apply for PPP funding and advise them as to how to apply for the loans when banks are no longer accepting applications or are using old forms.  (ECF 34-8, Glazier Suppl. Decl. ¶¶ 5–10).   But such past harm cannot justify an injunction extending the application deadline, and it is not clear what harm to Defy Ventures resulting from the prior iterations of the criminal history exclusion will continue past June 30. [24]  *See Action NC v. Strach,* 216 F. Supp. 3d 597, 644 (M.D.N.C. 2016) ("Thus, past harms suffered by Organizational Plaintiffs' diversion of resources cannot be prevented at this point through the issuance of an injunction").

The court must also consider practicality when fashioning injunctive relief.  *See id.* at 643–44.  It appears to be difficult – if not impossible – to identify who falls within the scope of

---

[24] It appears that Defy Ventures has also advised its graduates of alternative funding sources.  (ECF 1-3, Glazier Decl. ¶¶ 30–31).  It is not clear if this will continue past the June 30 deadline, the identities of the persons whom Defy Ventures has advised, and whether they are newly eligible and have been able to apply for PPP funding.

Defy Ventures' alleged harm.[25]   Perhaps because of this, the *Defy Ventures* plaintiffs' requested relief is overbroad and not sufficiently tailored to its harm.   The plaintiffs first requested an injunction that extends the deadline as to all individuals regardless of what contact they had with Defy Ventures.  This goes far beyond remedying Defy Ventures' specific harm from having to expend resources to help individuals apply for loans, get alternative funding, or notify them of the June 24 revised criminal history rule.  In response to a conference call this court had with counsel on June 29, 2020, the plaintiffs filed a proposed order requesting the court to extend the deadline only in the geographical areas in which the individual plaintiffs and Defy Ventures operates.  (ECF 38).[26]  But this is still overbroad, because it would extend relief to individuals that have never contacted Defy Ventures or whose only connection to this case is that they happen to live where Defy Ventures operates or where one of the individual plaintiffs lives. Accordingly, the court will not extend the application deadline to any individuals other than the individual plaintiffs.

VII.    Bond

Federal Rule of Civil Procedure 65 provides "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  "[T]he district court retains the discretion to set the bond amount as it sees fit or waive the security requirement."  *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013).  Here, any harm to the defendants is remote, given that the June 24 rule

---

[25] Another issue is who would determine whether an applicant falls within the scope of Defy Ventures' alleged harm.  For example, the lenders who make the loans or the SBA who guarantees them may have to decide whether the applicant is someone on whom Defy has spent resources and who should be able to apply past the deadline, an inquiry that would be difficult to administer and fraught with line-drawing issues.
[26] Defy Ventures cites to *Cook Cty., Illinois Wolf*, --- F.3d ----, No. 19-3169, 2020 WL 3072046 (7th Cir. June 10, 2020), in which the Seventh Circuit affirmed the district court's granting of a preliminary injunction enjoining enforcement of a challenged immigration rule in Illinois.  While that case supports granting an injunction limited to a geographical area, the injunction still must be appropriate for the circumstances of the case.

indicates that these businesses are eligible for PPP funding, and this injunction would only

extend the deadline to allow them more time to apply.  And "[f]orcing Plaintiffs to post a bond

would frustrate the purpose of the PPP and the purpose of the injunction – to get essential PPP

loans to struggling small businesses as soon as possible so that the businesses may use the funds

to pay displaced employees.  If the Court forced the Plaintiffs to expend funds by posting a bond,

that would divert money that could be used to pay employees and that are needed to help secure

Plaintiffs' financial survival."  *DV Diamond Club of Flint, LLC*, 2020 WL 2315880, at *17.

Further, access to the court is limited by the coronavirus pandemic and posting of a bond may

cause unreasonable delay.  Therefore, the court will waive the bond requirement.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part the plaintiffs'

motions for preliminary injunctions.  A separate order will be issued in each case.


6/29/20

Date

/S/

Catherine C. Blake
United States District Judge

28